PERRY, Edith, Plaintiff–Appellant,

v.

COMMAND PERFORMANCE,
Defendant–Appellee.

No. 89–2062.

United States Court of Appeals,
Third Circuit.

Argued June 27, 1990.

Decided Aug. 30, 1990.

R. Michael Carr (argued), LaBrum and Doak, Philadelphia, Pa., for defendant-appellee.

David R. Culp (argued), Philadelphia, Pa., for plaintiff-appellant.

Before SLOVITER and MANSMANN, Circuit Judges and THOMPSON, District Judge.*

* Honorable Anne E. Thompson of the United States District Court for the District of New Jersey, sitting by designation.

## OPINION OF THE COURT

ANNE E. THOMPSON, District Judge.

This is an appeal of the grant of summary judgment to the defendant Command Performance. Plaintiff, a black woman, brought this action against defendant beauty salon claiming a violation of 42 U.S.C. § 1981 and Pennsylvania law of intentional infliction of emotional distress. Plaintiff was refused service by one of the operators employed by defendant beauty salon after making an appointment by telephone to have her hair done. The district court granted summary judgment because it viewed the hairdresser's conduct as racial harassment occurring subsequent to contract formation and therefore not actionable under 42 U.S.C. § 1981 under the interpretation of that statute enunciated in *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). We conclude that the district court erred when it entered summary judgment on defendant's behalf, because there was an insufficient basis on the record for the court to have concluded that a contract had been formed before the incident. As we have frequently stated, we review the grant of summary judgment *de novo. See Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

### I. *FACTS*

On the morning of October 12, 1987, plaintiff's husband telephoned to the hair salon Command Performance in the King of Prussia Mall, to set up an appointment for his wife, Edith Perry. The appointment for Ms. Perry's "wash and set" was scheduled for noon on the same date.

Ms. Perry had had her hair done at this salon more than five times before by a number of different operators. On the date in question, Helene Kugler was scheduled to wash and set Ms. Perry's hair, as she had done previously. Not long after Ms. Perry arrived at the salon, Ms. Kugler explained to her that she had a bad cold and was not feeling well. She asked Ms. Perry if she would mind if another hairdresser were to do her hair. Ms. Perry consented. However, according to plaintiff's complaint and her deposition testimony, when Ms. Kugler asked Beth Abbott, another operator, to do plaintiff's hair, Ms. Abbott responded loudly, "No, no, no, no! I don't do black hair. No, no, no, no! Not today!" Ms. Abbott went on to exclaim, "I just don't do black people's hair! Oh, no, I'm not going to do your hair, I'm from New Hampshire and I don't deal with blacks!"

Throughout Ms. Abbott's protest, Ms. Perry grew increasingly distraught and started to cry. She called the security police. Her husband was located within the mall to escort her from the salon.[1] Plaintiff claims that she was traumatized by this incident and that as a result she suffered from hives and insomnia. In addition, she has pursued treatment with a psychiatrist.

### II. *BACKGROUND*

Section 1981 provides, in relevant part, that "all persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981 (1982). One year ago the Supreme Court decided the case of *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132, (1989). While not overruling the landmark case of *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), the Court limited the scope of conduct covered by 42 U.S.C. § 1981. *Patterson,* 109 S.Ct. at 2372, 2373; *McKnight v. General Motors Corp.,* 908 F.2d 104 (7th Cir.1990).

In *Patterson* the plaintiff was a black woman who was employed by the defendant credit union as a teller and file coordinator for ten years until she was laid off. She subsequently brought an action in the U.S. District Court for the Middle District

---

1. There exists a factual dispute as to whether Ms. Kugler offered to wash and set Ms. Perry's hair after Ms. Abbott's outburst. Command Performance sent a letter of apology, as well as an offer for a free wash and set to Ms. Perry after the incident. As noted at oral argument, it is unclear whether Command Performance or Ms. Abbott would be the appropriate defendant in this matter.

of North Carolina, alleging that her employer had harassed her, failed to promote her, and discharged her because of her race and in violation of 42 U.S.C. § 1981. *Id.* 109 S.Ct. at 2368–69.

The Court held that section 1981 "prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms." [2] *Patterson,* 109 S.Ct. at 2372. It does not extend to "problems that may arise later from the conditions of continuing employment." *Id.* It followed that racial harassment in an employment context "is not actionable under § 1981.... Rather, such conduct is actionable under ... Title VII of the Civil Rights Act of 1964." *Id.* at 2374.[3]

In dismissing plaintiff's civil rights claim in this case, the district court found that Ms. Perry had contracted with Command Performance at the time the appointment was made and that the contract was made "on racially neutral terms." The court further stated that, in accord with *Patterson,* "section 1981 would appear as legal grounds for a claim only if the defendant refused to enter into a contract with the plaintiff altogether or on terms different than those afforded white patrons...." App. at 101. The court found that neither of these circumstances occurred. It concluded therefore that although defendant's acts "could be properly labeled racial harassment, [such conduct] is not actionable under section 1981 because it occurred *after* the plaintiff formed the contract with the defendant." App. at 102 (emphasis in original).

### III. *DISCUSSION*

■ The court on a motion for summary judgment must view the facts presented and inferences to be drawn in the light most favorable to the party opposing the motion for summary judgment. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Matthews v. Freedman,* 882 F.2d 83, 84 (3d Cir.1989). In this case, the district court's dismissal was based on its conclusion that the parties had entered into a contract at the time Ms. Perry's husband telephoned Command Performance to set up an appointment for his wife. However, the record is inadequate to determine if the refusal to serve plaintiff occurred after the contract was made or was concurrent with the making of the contract. Arguably, an

**2.** The Court further explained that the statutory protection against discrimination in the enforcement of contracts refers only to a prohibition of "discrimination that infects *the legal process* in ways that prevent one from enforcing contract rights, by reason of his or her race...." *Patterson,* 109 S.Ct. at 2373 (emphasis added). This part of the Court's holding is not germane to the analysis of Ms. Perry's claim.

**3.** Although appellant argues that the Court's references to Title VII signify that its opinion is limited to the employment discrimination conduct, the Court's discussion is in terms of section 1981 in general, and we find no basis for such a distinction.

Plaintiff relies on a number of service cases that arose prior to *Patterson. See e.g., Wyatt v. Security Inn Food and Beverage, Inc.,* 819 F.2d 69 (4th Cir.1987) (Plaintiffs were permitted to proceed to trial and recover on claims filed pursuant to 42 U.S.C. §§ 1981, 1985, 1986, and 2000a. They alleged that defendant had discriminated against black lounge patrons by uneven enforcement of a policy which limited lounge access to drinking patrons only.); *Olzman v. Lake Hills Swim Club, Inc.,* 495 F.2d 1333 (2d Cir.1974) (Contract between white resident and private swim club, which prohibited members' bringing black guests to the pool, but allowed resident to bring other guests upon payment of a fee, could be enforced by black guests as third party beneficiaries, pursuant to 42 U.S.C. § 1981.); *Hernandez v. Erlenbusch,* 368 F.Supp. 752 (D.Or.1973) (Plaintiffs were permitted to bring claims pursuant to 42 U.S.C. §§ 1981, 1982 when they were served beer upon entering a bar, but were asked to leave when they began speaking Spanish.). We express no opinion on the effect of *Patterson* on these cases.

The scope of *Patterson* in the employment context is *not* before us. The Supreme Court, in deciding *Jett v. Dallas Indep. School Dist.,* —— U.S. ——, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), assumed without deciding that a petitioner's rights under section 1981 were violated by his removal and reassignment from his coaching position, which he alleged occurred because he was white. *See also Hicks v. Brown Group, Inc.,* 902 F.2d 630, 638 (8th Cir.1990) (Holding that discriminatory discharge is actionable under section 1981 after *Patterson* decision because protection from racially motivated deprivations of contracts is essential to the full enjoyment of the right to *make* contracts.) (emphasis in original).

appointment for hair salon services is merely an invitation to negotiate, and that acceptance of the offer occurs simultaneously to the performance of the contract. If that were the fact, then there would be no obligation to pay until, at least, the hairdresser began to render the services. Ms. Abbott's refusal to wash and set Ms. Perry's hair could be viewed as a declination to enter into a contract for services with Ms. Perry.[4]

It is therefore necessary to remand this matter to the district court to more fully develop the record on the issue of whether a contract was made at the time of the scheduling of the appointment, a fact the district court assumed but as to which there was no evidence. The court may wish to consider such factors as industry practice and the expectations of the parties to the instant case. Only if the district court determines as a matter of fact that there was a contract in existence at the time plaintiff appeared at the salon could it characterize the hairdresser's conduct as post-contract behavior.

In addition, even if the district court concludes that Ms. Perry entered a contract with Command Performance at the time the appointment was made, the court must give the parties an opportunity to present evidence as to whether that contract was grounded on discriminatory terms, *i.e.*, to provide services only if a hairdresser were available who would be willing to wash and set a black patron's hair. Because it is possible to conclude from this record that a white woman with an appointment to see Ms. Kugler would have been provided services by Ms. Abbott, or at the least, would not have been denied services on the basis of her race, the contract itself may have been a violation of section 1981. *See Patterson*, 109 S.Ct. at 2372, 2377. In that event, it would be consistent with *Patterson* to allow plaintiff to proceed with her section 1981 claim.

Because the court entered judgment for the defendant, it never considered whether the conduct of the employee at issue was either authorized or a policy of Command Performance for which it may be held liable. Nor did it decide whether defendant's acts were intentionally discriminatory, for only intentional discrimination is actionable under 42 U.S.C. § 1981. *Patterson*, 109 S.Ct. at 2377 (*citing General Building Contractors Assn., Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982)). These matters remain for consideration on remand.

## IV. CONCLUSION

For the reasons set forth, we conclude that there was an inadequate basis for the district court to have concluded that Ms. Perry's section 1981 claim is barred by the Supreme Court's decision in *Patterson*. We will vacate the order of the district court and remand this matter for further proceedings consistent with this opinion. Costs are to be paid by the appellee.

---

4. *See Roberts v. Walmart Stores, Inc.*, 736 F.Supp. 1527, 1529 (E.D.Mo.1990) (Defendant wrote race of plaintiffs on plaintiffs' check for payment of goods they sought to purchase. "After *Patterson* the resolution of this civil rights claim turns on an interpretation of the Missouri Commercial Code to determine whether the contract was formed at the time the alleged violation occurred. The court does not possess enough information about the retail transaction to ascertain whether a contract was already formed at the time defendant recorded the race of plaintiffs on the check.").