Samuel I. PRATHER,
Plaintiff–Appellant,

v.

**DAYTON POWER & LIGHT COMPANY, Defendant–Appellee.**

No. 89–3999.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 2, 1990.

Decided Nov. 14, 1990.

Rehearing and Rehearing En Banc
Denied Dec, 28, 1990.

**1256**

Kenneth W. Scott (argued), Edward S. Monohan, Florence, Ky., for plaintiff-appellant.

Jane M. Lynch (argued), Neil Freund, Freund, Freeze & Arnold, Dayton, Ohio, for defendant-appellee.

Before KENNEDY, BOGGS, and TIMBERS *, Circuit Judges.

KENNEDY, Circuit Judge.

Appellant Samuel I. Prather appeals the grant of summary judgment to his employer, Dayton Power & Light Company, in this 42 U.S.C. § 1981 action in which he claims he was discharged on account of his race. Relying on *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the magistrate held that section 1981 provided no remedy for racially motivated discharges. Prather also appeals the denial of his motion to amend his complaint. For the reasons stated hereafter we affirm.

In September 1982, appellant was terminated by Dayton. He pursued a grievance process through collective bargaining arbitration, alleging that he was discharged because of his race, and filed a complaint with the Ohio Civil Rights Commission. The arbitration panel denied his grievance but he eventually received back pay and reinstatement through the Ohio Civil Rights Commission proceedings.

In March 1985, appellant filed this action under 42 U.S.C. § 1981, seeking additional damages for his discriminatory discharge. Following an appeal to this Court, which held that the statute of limitations did not bar appellant's claim, appellant's motion for summary judgment on liability was granted, based on the *res judicata* effect of the state court decision. Before the trial on damages began, the Supreme Court decided *Patterson.* In light of *Patterson,* appellee moved for summary judgment, which the magistrate granted.[1] Appellant then moved to amend his complaint in an attempt to allege facts that would maintain a 1981 action after *Patterson.* Appellant's motion was denied.

I.  Application of *Patterson*

The Supreme Court held in *Patterson* that an employee's claims of racial harassment by the employer were not actionable under 42 U.S.C. § 1981 "because that provision does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." 109 S.Ct. at 2369. Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings

---

* The Honorable William H. Timbers, United States Court of Appeals for the Second Circuit, sitting by designation.

1. The parties had consented to magistrate trial jurisdiction under 28 U.S.C. § 636(c).

for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The *Patterson* Court held that section 1981 does not cover conditions of employment, but only discrimination in the formation of the employment contract or the right to enforce that contract.

> The most obvious feature of the provision is the restriction of its scope to forbidding discrimination in the "mak[ing] and enforce[ment]" of contracts alone. Where an alleged act of discrimination does not involve the impairment of one of these specific rights, § 1981 provides no relief.

*Patterson,* 109 S.Ct. at 2372 (quoting section 1981).

The Court held that unless the alleged discrimination affected the plaintiff's right to enter into a contract or her right to enforce a contract through judicial or nonjudicial means, then it, "reprehensible though it be if true, is not actionable under § 1981, which covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Id.* 109 S.Ct. at 2374. *Patterson* did not address the issue of discharge directly, but it did explicitly limit the application of section 1981 to discrimination in the formation or enforcement of contracts. Discharge from employment involves neither of these elements.

This Circuit has applied *Patterson* to discharge cases in earlier unpublished opinions.[2] This appears to be the first case, however, in which the application of *Patterson* to discharge cases is addressed directly in a decision for publication. To limit *Patterson* to cases involving discrimination in ongoing employment is to ignore the language and reasoning of the Su-

preme Court. *Patterson* explicitly stated that section 1981 "does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." *Id.* at 2369. In refusing to extend section 1981 to harassment cases, the Court reasoned that Title VII's procedures would be of little effect if they could be circumvented by suits under section 1981. Title VII is clearly concerned with discharge cases and provides for back pay and reinstatement.[3] Reinstatement is not available under section 1981 and is much more likely to come about in the conciliation procedures of Title VII. The Court noted:

> Unnecessary overlap between Title VII and § 1981 would also serve to upset the delicate balance between employee and employer rights struck by Title VII in other respects. For instance, a plaintiff in a Title VII action is limited to a recovery of backpay, whereas under § 1981 a plaintiff may be entitled to plenary compensatory damages, as well as punitive damages in an appropriate case. Both the employee and employer will be unlikely to agree to a conciliatory resolution of the dispute under Title VII if the employer can be found liable for much greater amounts under § 1981.

*Patterson,* 109 S.Ct. at 2375 n. 4.

Other circuits which have decided this issue have not agreed on whether *Patterson* excludes discharge cases from causes of action created by section 1981. Several circuits have held that *Patterson* does apply to discharge cases. *See McKnight v. General Motors Corp.,* 908 F.2d 104 (7th Cir.1990); *Courtney v. Canyon Television & Appliance Rental, Inc.,* 899 F.2d 845 (9th Cir.1990); *Lavender v. V & B Transmissions & Auto Repair,* 897 F.2d 805 (5th Cir.1990). *Contra Hicks v. Brown Group,*

---

**2.** *See Jones v. City of Cleveland,* 898 F.2d 154 (6th Cir.1990) (unpublished per curiam); *Singleton v. Kellogg Co.,* 890 F.2d 417 (6th Cir.1989) (unpublished per curiam) ("In light of *Patterson,* plaintiff's claim of racially discriminatory discharge is no longer cognizable under section 1981").

**3.** Over 43% of all Title VII cases involve discharge, a far greater percentage than that attributed to any other issue. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, CENTRAL DATABASE STATISTICS (1989) (available upon request from EEOC).

*Inc.*, 902 F.2d 630 (8th Cir.1990) (*Patterson* does not apply to discharge cases).

Appellant argues that *Patterson* does not apply to discriminatory discharge because · if discrimination is allowed in the termination of a contract, the purpose of forbidding discrimination in the formation of that contract is defeated. The Eighth Circuit, in its decision in *Hicks*, was concerned with the situation in which section 1981 would prevent discrimination in hiring an applicant one day but would not prevent the employer from discharging that same applicant the next. Section 1981, however, cannot be read as an isolated piece of legislation. Although section 1981 does not create a cause of action for discriminatory discharge, it does not forbid such suits. A plaintiff who has no recourse under section 1981 may still pursue a course of litigation under Title VII, as well as under many state civil rights statutes. Excluding discharge cases from section 1981 actions does not leave plaintiffs without recourse. Appellant's case serves as an example, showing that the different remedies fit together. He has already sued and recovered back pay and reinstatement in a prior state action. It is not necessary to apply section 1981 to discharge cases, and "the Court in *Patterson* counseled against stretching the meaning of section 1981 to protect conduct already covered by Title VII." *Overby v. Chevron USA, Inc.*, 884 F.2d 470, 473 (9th Cir.1989).

The dissent fails to recognize that Title VII procedures are designed, in discharge cases, to reinstate the employee and resurrect the ongoing relationship. It was Ohio's substitute for Title VII that reinstated Prather. The ongoing relationship with which the *Patterson* Court is concerned, therefore, does exist where the discharged plaintiff prevails, either through EEOC conciliation (or its state substitute) or a Title VII action, and that relationship is likely to be harmed by the award of section 1981 damages.

Further, the case before us does not involve a situation where an employer hired an applicant to conform with section 1981, but never intended to actually make a contract on the terms offered to others. Appellant had been employed for several years before his discharge. The discriminatory conduct he experienced took place well after his contract of employment was in place.

■ We turn next to the issue of retroactivity. The general rule that judicial decisions be given retroactive effect applies here. *See Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973). In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court established three factors that call for the application of the non-retroactivity exception. The situation in this case does not satisfy those factors. Although *Patterson* may have established new law, applying it retroactively will not " 'retard its operation,' " nor will it produce " 'substantial inequitable results' " that might otherwise be avoided. *Id.* 404 U.S. at 106–07, 92 S.Ct. at 355–56 (citations omitted). Although retroactive application of *Patterson* will prevent appellant from obtaining damages under section 1981, appellant has already received reinstatement and back pay through use of state proceedings. Appellant will not, therefore, be unduly prejudiced.[4]

## II. Appellant's Motion to Amend his Complaint

■ Appellant moves to amend his complaint in an attempt to continue his section 1981 action. Appellant wishes to incorporate claims that in 1983 appellee interfered with the arbitration proceedings on this matter. Appellant claims that appellee threatened and intimidated witnesses to prevent them from testifying at the arbitration proceedings. Appellant now claims that those actions constituted a violation of his right to enforce his contract. Appellant's amended complaint would claim that

---

**4.** This Court has already applied *Patterson* retroactively in several unpublished decisions. *See* cases cited *supra* note 2; *Bell v. Kroger, Inc.*, 897 F.2d 529 (6th Cir.1990) (unpublished per curiam) (transfer claim); *Becton v. Burlington Northern R.R. Co.*, 878 F.2d 1436 (6th Cir.1989) (unpublished per curiam) (claims of harassment and demotion).

appellee violated section 1981 with its "efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations...." *Patterson*, 109 S.Ct. at 2373.

The magistrate denied appellant's motion to amend his complaint because the amendment at this late date, eight years after he was discharged and seven years after the alleged intimidation, would be highly prejudicial to the appellee. Appellant's original and amended complaint included only allegations of discriminatory discharge. Appellant offers no reason for the omission of these claims from his earlier complaint. The amendment relates to entirely different conduct than that involved in the original complaint, since the arbitration process was never before at issue. To force appellee to begin to formulate a defense to these allegations at this late date would be highly prejudicial. *See Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The magistrate did not abuse his discretion in denying appellant's motion to amend the complaint.

The grant of appellee's motion for summary judgment and denial of appellant's motion to amend are AFFIRMED.

BOGGS, Circuit Judge, dissenting.

Because I believe that a logical and faithful reading of the Supreme Court case law compels the conclusion that discriminatory discharges are actionable under 42 U.S.C. § 1981, I respectfully dissent.

I believe that the statutory language, "right ... to make ... contracts," is properly interpreted to include the right to continue to work under an employment contract in the face of a discriminatory discharge. This interpretation has been confirmed by the Supreme Court on numerous occasions. *See, e.g., Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493

(1976). It has never been explicitly rejected.

A commonsense understanding of § 1981 is that the right to be free from discrimination in the making of a contract includes the right to be free from discrimination in the unilateral termination of that contract. Discharge is fundamentally different from harassment and other types of "conduct by the employer after the contract relation has been established." *Patterson*, 109 S.Ct. at 2373. By subsuming discriminatory discharge under the category of "conduct which occurs after the formation of a contract," *id.* at 2369, the court today dismisses what seems to me to be a basic distinction: by no other postformation action is the employee deprived of the fundamental benefit of the employment contract—a job. A discriminatory discharge destroys the very existence of the contract and deprives the employee of the essence of the right to make an employment contract.

It seems to me rather irrelevant that, as the court notes, Prather was not terminated the very day or week after he entered his employment contract. That "[t]he discriminatory conduct that he experienced took place well after his contract of employment was in place" (opinion at 1258) does not diminish the harshness of the court's general holding. By relieving an employer of liability under § 1981 for firing an employee after hiring, the court permits an employer to accomplish through the back door what § 1981 will not permit that employer to do directly. I find it thoroughly inconsistent to require an employer to be nondiscriminatory in hiring but to allow that employer to fire with impunity under the statute.

The Supreme Court decisions interpreting 42 U.S.C. § 1981 and its reach are not a model of clarity. In the landmark case of *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), the Supreme Court pushed the meaning of § 1981 beyond its obvious language. The statute states only that "all persons ... shall have the same *right* ... to make and enforce contracts as is enjoyed by white citizens." (Emphasis added). However, the Supreme

Court held that in cases involving discrimination, persons should have a right not otherwise accorded to white citizens, the right to make a contract with an unwilling opposing party. This decision added a panoply of new remedies, including jury trial and damages, as well as a new range of targets, such as private schools, to the nation's basic anti-discrimination laws.

The law at this point was relatively clear. In *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), however, the Supreme Court, while retaining the basic interpretation of "right" as meaning "privilege," revisited the term "make contracts" and restricted the meaning of that term. *Patterson*, 109 S.Ct. at 2373-75.

Having previously determined that a proper interpretation of § 1981 permits a suit for a discriminatory discharge, I find, as others have, that "the difficult question is whether that interpretation can and does survive *Patterson*." *McKnight v. General Motors Corporation*, 908 F.2d 104, 117 (7th Cir.1990) (Fairchild, J., concurring in part). The language of *Patterson*, to the extent it can be read as pertaining to discharges, is equivocal at best. For example, the Court states that the right to make a contract "extends only to the formation of a contract, but not to problems that arise later *from the conditions of continuing employment.*" 109 S.Ct. at 2372 (emphasis added). This language seems to imply that if a discharge is not a "problem" arising from a "condition of continuing employment," then it is actionable under § 1981. Elsewhere, however, the Court states with apparently greater definitiveness that "§ 1981 ... does not apply to conduct which *occurs after the formation of a contract ....*" *Id.* at 2369 (emphasis added). But still later, the Court states that "*postformation conduct* does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the *conditions of continuing employment ....*" *Id.* at 2373 (emphasis added). This statement suggests that, to the extent that a discharge does more than "implicate[ ] ... the conditions of continuing employment," a discharge is not the sort of postformation conduct that the Court found not to "involve the right to make a contract."

Our problem is created by the fact that these two principles point to directly opposite conclusions in the case of firings motivated by allegedly racial discrimination. A literal application of the language on "postformation conduct" means § 1981 does not cover firings. Firings, by definition must follow hirings. However, the Court has indicated that at least one type of conduct that appears to be post-formation, promotion, shall be deemed to relate to the making of a new contract, and thus falls outside this language. *Id.* at 2377.

On the other hand, a literal application of the second stricture would allow suits concerning firing. Mr. Prather does not complain of his conditions of employment. He complains that he has no employment, having been wrongly fired. The majority concedes that a hiring, followed closely by a firing, could be considered the functional equivalent of no hiring at all, thus triggering § 1981 coverage. Opinion at 1257. It seems to me that a firing at any date raises the same concerns as a failure to hire:

(1) The party has no contract; it was made in the past, but it has now been completely unmade.

(2) There is no relationship to salvage. It has been terminated by the employer.

(3) Title VII may not provide complete relief.

As none of this language seems to remove discharge claims from the protective scope of § 1981, the dissent in *Patterson* assumed, without objection by the majority, the statute's continuing application:

The very same legislative history that supports our interpretation of § 1981 in *Runyon* [v. *McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) ] also demonstrates that the 39th Congress intended, in the employment context, to go beyond protecting the freedmen from refusals to contract for their labor *and*

*from discriminatory decisions to discharge them.*

109 S.Ct. at 2388 (emphasis added).

I find illuminating the Court's consideration of Patterson's claim for failure to promote. The Court held that a racially discriminatory denial of a promotion, in contrast to the harassment of an employee, is actionable under § 1981 "where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer." *Id.* at 2377. This holding indicates that the Court believed that *some* post-contract formation activity—that which strikes at the essence of the contract or affects its very existence—is actionable under § 1981.

I would hold that the entire reason for protecting "the right to make contracts" is because of the benefits of the status of having a contract or job. If § 1981 can cover the failure to achieve a "new and distinct relation" within an existing job, it would seem to me to be most illogical to deny that § 1981 covers a persons being cast into a "new and distinct relation"—that of unemployment—from an existing job. Certainly that severance is far more drastic in practical terms than the failure to achieve a promotion. It is also more destructive of the existing relationship, the very relationship that is a reason given for not allowing actions based on conditions of employment. *See Patterson*, 109 S.Ct. at 2374–75.

The court today emphasizes that Prather's claim is more properly cognizable under Title VII, and that the *Patterson* Court sought to avoid "[u]nnecessary overlap between Title VII and § 1981." *Id.* at 2375 n. 4. *Patterson* recognized, however, that "some overlap will remain between the two statutes: specifically, a refusal to enter into an employment contract on the basis of race." *Id.* at 2375. Because I believe that a discriminatory discharge constitutes a constructive refusal to enter into a non-discriminatory employment contract, I find this to be a case in which overlap between the two remedial statutes is appropriate under *Runyon.*

In explaining why it took the action that it did in *Patterson*, the court emphasized the following factors distinguishing the areas remaining under the "privilege" doctrine of § 1981:

(1) they involve the essence of an employment relationship, *Id.* at 2377;

(2) the overlap with Title VII and other remedies is more understandable, *Id.* at 2375; and,

(3) the more meliorative remedies of Title VII would be preferable only where a relationship existed. *Ibid.*

The facts here offer a particularly compelling case for a resort to § 1981. Prather filed an EEOC charge, and the Ohio Civil Rights Commission ordered an award of back pay. Prather now seeks a remedy unavailable under Title VII—the recovery of damages sufficient to compensate him completely for the discrimination he suffered. I cannot agree with the court that Prather's § 1981 claim would allow him to "circumvent" Title VII's procedures, since Title VII does not offer the relief sought.[1]

A very recent Third Circuit case shows the extremely strained construction that can arise from an absolutely fixed gaze on the moment of contract formation. In *Perry v. Command Performance*, 913 F.2d 99 (3d Cir.1990), a black customer called a hairdressing parlor and made an appointment for service. When she appeared, the available hairdresser made the claim (perhaps novel in American jurisprudence) "I'm from New Hampshire and I don't deal with blacks!" *Id.* at 100. The district court granted summary judgment for the defendants on the ground that this act was clearly "post formation." The Third Circuit reversed and remanded, directing the district court to determine whether the contract

---

1. Although the court cites the statistic that 43% of all Title VII cases involve discharge claims (opinion at 1257, n. 3) in support of its argument that a claim such as Prather's can be adequately addressed by Title VII, I note that studies have indicated that discriminatory discharge actions have traditionally been one of the most common uses of § 1981. *See Hicks v. Brown Group, Inc.*, 902 F.2d 630, 638 (8th Cir. 1990) (citing Eisenberg and Schwab, *The Importance of Section 1981*, 73 Cornell L.Rev. 596, 599–601 (1988)).

was made at the time of the phone call or was only made if service was offered when the customer appeared. *Id.* at 102. The circuit court apparently agreed with the majority in our case that any type of conduct, no matter how discriminatory, is not encompassed by § 1981 if it literally occurs after formation.

In my view, this simply emphasizes that the focus should be on whether the contract is actually in existence and being carried out to some degree, in which case quarrels over conditions of employment or conditions of service are not actionable. To say that there is no action for making a contract on the phone and breaking it when the person appears is to undermine completely the court's holding in *Runyon* and its reaffirmation in *Patterson.*

There is further evidence that the Court in *Patterson* did not intend to withdraw discharge suits from § 1981's protection. The Court has several times in subsequent cases indicated that it has not decided this question. In *Jett v. Dallas Independent School District,* —— U.S. ——, 109 S.Ct. 2702, 2709, 105 L.Ed.2d 598 (1989), decided one week after *Patterson,* the Supreme Court assumed *arguendo* that the scope of the "right ... to make ... contracts" under § 1981 reaches racially motivated discharges. In *Jett,* the employer school district did not contest that the football coach who was relieved of his duties was protected by § 1981. The Court therefore "assume[d] ..., without deciding, that petitioner's rights under § 1981 have been violated by his removal and reassignment." *Id.* 109 S.Ct. at 2710. It appears that the Court had a clear opportunity in *Jett* to apply *Patterson* to discharge cases but declined to do so.

Then in *Lytle v. Household Manufacturing, Inc.,* —— U.S. ——, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990), the Court reaffirmed that it had not decided the question whether a retaliatory discharge is actionable under § 1981. Because the district court had not addressed the question, the Court refused to decide the matter without the benefit of a complete record. Justice O'Connor in concurrence noted that:

> [o]n remand, therefore, the parties will have ample opportunity to present arguments, and the lower courts will have the first opportunity to consider whether either of petitioner's charges relates to the formation or enforcement of a contract, the two types of claims actionable under § 1981, *Patterson,* ... 109 S.Ct., at 2374, or relates only to "postformation conduct unrelated to an employee's right to enforce [his] contract." *Id.,* at ... 2367.

*Id.* at 1339.

I do not believe that the Court would have failed to discuss in *Patterson* the implication of that opinion for the substantial body of Supreme Court case law permitting discharge suits under § 1981 if *Patterson* was intended to have any such implication. I also find it significant that neither *Jett* nor *Lytle* makes the same assumptions about *Patterson* 's effect on discharge claims that the court's opinion does today.

In our situation, the Supreme Court apparently having been deliberately ambiguous, it seems to me that we should interpret *its* ambiguities in a fashion that makes the law a more coherent scheme. Having been precluded from a rigorous interpretation of the language of the statute by the decisions in *Runyon* and *Patterson,* we should give those decisions an interpretation that will provide sensible coverage of "an evil aimed at" rather than a strained construction, not compelled by the statutory language. Our decision today will, in the words of Shakespeare's *Macbeth,* "keep the word of promise to our ear, and break it to our hope." [2]

If Mr. Prather has a right to "make" a contract with an unwilling adversary, that right is substantially vitiated if the adversary can "unmake" the contract without legal liability or opportunity for redress.

As *Patterson* leaves open the question whether a discriminatory discharge violates § 1981, I would respect the principle of *stare decisis* and continue to permit, under

---

2. *Macbeth,* Act V, Scene vii, lines 50–51.

§ 1981, suits alleging discriminatory discharges. I therefore would agree with the decision of the Eighth Circuit in *Hicks v. Brown Group, Inc.*, 902 F.2d 630 (8th Cir. 1990) and would reverse and remand for a new trial.