**Mary R. HILL, Plaintiff,**

v.

**JUDSON RETIREMENT COMMUNITY, Defendant.**

**No. C88–3956.**

United States District Court,
N.D. Ohio, E.D.

Sept. 13, 1991.

---

Steven L. Howland, Cleveland, Ohio, for plaintiff.

James D. Vail, Sharon L. Sobol, Schneider, Smeltz, Ranney & LaFond, Cleveland, Ohio, for defendant.

## ORDER

BATTISTI, District Judge.

Before the Court are Defendant's Motion for Summary Judgment, Plaintiff's Motion for Summary Judgment and their corresponding briefs. For the reasons stated

herein, Defendant's motion is granted and Plaintiff's motion is denied.

## I. FACTS

On November 2, 1981, Plaintiff Mary Hill ("Hill") was hired as a Receptionist/Switchboard Operator at Defendant Judson Retirement Community's ("Judson") retirement facility known as Judson Park. Hill received satisfactory or better performance ratings in annual employee performance reviews in 1982, 1984, 1985, 1986, and 1987. (See Exhibits 4–8 attached to Defendant's Motion for Summary Judgment.) She also was granted wage increases in 1986 and 1987. (See Exhibits 7–8 attached to Defendant's Motion for Summary Judgment.)

In June 1987, Judson's Marketing Department performed a study of the receptionist/switchboard areas at both Judson Park and Judson Manor. The study was part of a plan to develop a marketing plan for and remedy complaints about this area. (Exhibits 1, 22–23 attached to Defendant's Motion for Summary Judgment.)

In August 1987, Ernst & Whinney performed a study to determine the source of continuing problems in the receptionist/switchboard operator area. (Exhibit 1 attached to Defendant's Motion for Summary Judgment.) As a result of this study, Judson reorganized the entire Judson Park receptionist/switchboard operator area. (Exhibit 1 attached to Defendant's Motion for Summary Judgment.)

On September 15, 1987, Judson informed Hill that she would be reassigned to the position of Assistant to the Day Enrichment Center effective September 21, 1987, as part of the reorganization. Judson also made the following other staff changes as part of its reorganization: (1) hired a full-time White female to perform the administrative functions and to supervise the receptionists; (2) reduced the hours of the other full-time receptionist, a White female; (3) switched one of the weekend receptionists, a White female, to weekdays and reduced her hours; (4) reduced the hours of the other weekend receptionist, a Black female; and (5) switched a Black female from weekday evenings to weekends. (Exhibit 18 attached to Defendant's Motion for Summary Judgment.)

On September 18, 1987, Hill filed a race discrimination charge with the Ohio Civil Rights Commission. She alleged that she was transferred because of her race. (See Exhibit 1 attached to Defendant's Motion for Summary Judgment.) On July 7, 1988, the Commission found that it was not probable that Judson engaged in unlawful discrimination practices. The Commission denied Hill's request for reconsideration on August 19, 1988.

Hill filed this action on October 25, 1988. In her Complaint, Hill alleges that on November 24, 1987, she took a leave due to illness, allegedly the result of the intolerable working conditions created by Judson's retaliatory conduct. She also alleges that she was eventually forced to resign.

## II. SUMMARY JUDGMENT

The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view all facts and inferences in a light most favorable to the nonmoving party. *Sims v. Memphis Processors, Inc.*, 926 F.2d 524, 526–27 (6th Cir.1991) (citations omitted).

"The moving party has the burden of showing the absence of any genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action." *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "If this burden is met, the nonmoving party must present 'significant probative evidence' showing that genuine, material factual disputes remain to defeat summary judgment." *Sims*, 926 F.2d at 526 (citations omitted). The nonmoving

party is required "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)).

## III.  § 1981 CLAIMS

In *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held "that racial harassment relating to the conditions of employment is not actionable under § 1981 because that provision does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." *Id.* at 171, 109 S.Ct. at 2369. The Supreme Court stated that "[s]ection 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts." *Id.* at 176, 109 S.Ct. at 2372. In *Patterson,* the Court stated that section 1981

> prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms. But the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.

*Id.* at 176–77, 109 S.Ct. at 2372–73.

### A.  Racial Discrimination Claim

■ Plaintiff attempts to avoid the impact of *Patterson* by arguing that her reassignment constituted "an offer to make a contract only on discriminatory terms." Plaintiff offers no evidence to prove this allegation. Even if Plaintiff were able to provide such proof, her argument is still without merit. The reassignment of an employee to a position with different or even lessened responsibilities than his previous position does not constitute a constructive discharge. *Bielert v. Northern Ohio Properties,* 863 F.2d 47 (6th Cir.1988) (citations omitted). Since there was no termination of the original employment contract, there can be no new offer. Thus the conduct which plaintiff cites is not discriminatory conduct but merely "postformation conduct by the employer relating to the terms and conditions of continuing employment," *Patterson,* 491 U.S. at 179, 109 S.Ct. at 2374, which is not actionable under § 1981. *Id.*

### B.  Retaliatory Discharge

■ Although the Supreme Court in *Patterson* did not specifically address whether § 1981 applied to discriminatory discharge, the Sixth Circuit has held that such claims are no longer cognizable. *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 545 (6th Cir. 1991); *Prather v. Dayton Power & Light Co.,* 918 F.2d 1255 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991). The Sixth Circuit also determined that *Patterson* should be applied retroactively. *Prather,* 918 F.2d at 1258.

Thus both of Hill's § 1981 claims are barred by *Patterson* and Judson is entitled to summary judgment on these claims as a matter of law.

## IV.  TITLE VII CLAIMS

The Supreme Court has established an elaborate scheme for allocating the burden in Title VII cases.

> First the plaintiff has the burden of proving by the preponderance of evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving a prima facie case, the burden shifts to defendant 'to articulate some legitimate, nondiscriminatory reason for the employ-

ee's rejection.' Third, should the defendant carry this burden, the plaintiff must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See also Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309 (6th Cir.1989). "[T]he ultimate burden of proving that the defendant intentionally discriminated against the plaintiff remains with the plaintiff at all times." *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir.1987) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)).

A.  Racial Discrimination

The parties offer differing standards for establishing the prima facie case under Title VII.  The Sixth Circuit has stated that *"McDonnell Douglas* does not require that the identical *prima facie* analysis be used in every discriminatory discharge case. . . . [T]he *prima facie* proof required by a plaintiff in a Title VII case may differ with each factual situation." *Mills v. Ford Motor Co.*, 800 F.2d 635, 639 (6th Cir.1986).

■  Defendant's statement of the test is more appropriate to this factual setting. *See Becton v. Detroit Terminal Consolidated Freightways*, 687 F.2d 140, 141 (6th Cir.1982), *cert. denied*, 460 U.S. 1040, 103 S.Ct. 1432, 75 L.Ed.2d 791 (1983).  Thus to establish a prima facie case under Title VII, Plaintiff must show that: (1) she is a member of a protected class; (2) she was satisfactorily performing her job; (3) despite this performance, she was discharged; and (4) she was replaced by a person not a member of the protected class. *Id.*  This standard is "not onerous." *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

■  Hill has established a prima facie case of racial discrimination under Title VII.  It is undisputed that plaintiff is a member of a protected class.  The Employee Performance Appraisal Program sheets for Hill for 1982, 1984, 1985, 1986, and 1987 establish that Hill was satisfactorily performing her job.  (See Exhibits 4–8 attached to Defendant's Motion for Summary Judgment.)  In each instance, Hill received ratings of satisfactory or better.  The forms also indicate that Hill was granted wage increases in 1986 and 1987.  (See Exhibit 7–8 attached to Defendant's Motion for Summary Judgment.)  In November 1986, Hill attended the Association of Ohio Philanthropic Homes and Housing for the Aging's annual meeting.  While there she attended a session for office personnel entitled "Voice Management and Effective Communication."  (See Exhibit 10 attached to Defendant's Motion for Summary Judgment.)  Although Defendant characterizes Hill's attendance at a telecommunications training seminar as remedial, the exhibit shows that Hill attended the annual meeting and while there attended the training. This evidence does not reflect on the adequacy of Hill's job performance.  Defendant also relies on several notes in Hill's personnel file to discredit her job performance.  (See Exhibits 9, 11–14 attached to Defendant's Motion for Summary Judgment.)  Although these notes indicate that Hill made errors while taking messages, they are not sufficient, when taken in a light most favorable to the nonmovant, to show poor overall performance.  The additional documentation offered by Judson to discredit Hill's performance is not specific to her performance, and instead reflects on the receptionist/switchboard operators as a whole.  Thus, the evidence shows that Hill was satisfactorily performing her job.

The reorganization of the receptionist/switchboard area included reassigning Hill to the position of Assistant to the Day Enrichment Center and switching one of the weekend receptionists, a White female, to weekdays.  (See Exhibit 1 attached to Defendant's Motion for Summary Judgment.)  This evidence, taken in a light most favorable to the nonmoving party, estab-

lishes that Hill was involuntarily reassigned and replaced by a person not a member of the protected class.

■ Since Hill has successfully established a prima facie case, the burden shifts to Judson "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). Judson offered evidence to show that it transferred Hill as part of the reorganization of its receptionist/switchboard operator area. Thus, Judson has supplied evidence of a legitimate, non-discriminatory reason for reassigning Hill.

■ Since Judson has met its burden, Hill must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Hill

can establish that the legitimate, nondiscriminatory reason for the employment decision articulated by the defendant employer is pretextual in one of two ways. The first is to establish by a preponderance of evidence that the discriminatory reason was the true reason motivating the employer's conduct. Alternatively, the plaintiff can prove pretext by showing that the proffered legitimate reason was false.

*Sims v. Cleland,* 813 F.2d 790, 793 (6th Cir.1987) (citation omitted).

Hill has failed to offer evidence to rebut Judson's legitimate, nondiscriminatory reason for reassigning her to the position of Assistant to the Day Enrichment Center. Thus Defendant is entitled to summary judgment as a matter of law on Hill's racial discrimination claim.

B. Retaliatory Discharge

■ Judson argues that Hill's retaliation claim should be barred because Hill failed to exhaust her administrative remedies. The Sixth Circuit held that

[i]n order for federal courts to have subject matter jurisdiction of Title VII claims, the claimant must first unsuccessfully pursue administrative relief. Courts have thus held that if the claimant did not first present a claim to the Equal Employment Opportunity Commission (EEOC), that claim may not be brought before the court. The judicial complaint must be "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."

*Ang v. Procter & Gamble Co.,* 932 F.2d 540, 545 (6th Cir.1991) (citations omitted). The Sixth Circuit further stated that

[c]ourts have held "that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." Because retaliation claims, by definition, arise after the filing of the EEOC charge, this rule promotes efficiency by requiring only one filing.

*Id.* at 546–47 (citations omitted). Since the alleged retaliatory conduct Hill complains of occurred after the filing of her EEOC charge, she was not required to exhaust her administrative remedies.

■ To establish a prima facie case for retaliatory discharge, Hill must show that: (1) she engaged in an activity protected by Title VII; (2) that Judson knew of this activity; (3) that, thereafter, Judson took an employment action adverse to her; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987) (citing *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir.1982)).

Hill engaged in activity protected by Title VII when she filed her discrimination charge with the Ohio Civil Rights Commission. The EEOC notified Judson of the charge on September 24, 1987. (See Exhibit 18 attached to Defendant's Motion for Summary Judgment.)

Hill has failed to establish a causal link between the filing of her discrimination charge and her alleged constructive discharge. Hill claims that "proximity in time between the adverse action and the protected expression is a sufficient basis for showing a causal connection." The Sixth Circuit has stated that "[t]he mere fact that [a claimant] was discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation." *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir.1986).

Since Hill has failed to establish an element of her prima facie case, all other facts are rendered immaterial. *See Elvis Presley Enters. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir.1991). Thus Judson is entitled to summary judgment on Hill's retaliation claim as a matter of law upon facts that are not genuinely disputed.

### V. CONCLUSION

For the reasons stated herein, Defendant Judson Retirement Community's Motion for Summary Judgment is granted and Plaintiff Mary Hill's Motion for Summary Judgment is denied.

IT IS SO ORDERED.