65 F.3d 168
 151 L.R.R.M. (BNA) 2800
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Gregory MURRAY, Plaintiff-Appellant,
v.
DETROIT RIVERVIEW HOSPITAL; Detroit-MaComb Hospital Corp.;
Detroit Riverview Hospital Workers Local 2435, American
Federation of State, County and Municipal Employees
(AFL-CIO), a labor organization; and Michigan AFSCME
Council 25 (AFL-CIO), a labor organization, Defendants-Appellees.
 
 No. 94-1187.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1995.
 Before: BROWN, KENNEDY and NORRIS, Circuit Judges.
 OPINION
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Plaintiff Gregory Murray brought this hybrid suit against Detroit Riverview Hospital and the union that represented him, Detroit Riverview Hospital Workers Local 2435, after the hospital terminated his employment. The district court granted summary judgment in favor of defendants, and Murray appealed.
 
 I.
 
 2
 The hospital fired Murray on April 1, 1991 for allegedly breaking a work rule. He contends that the firing was in retaliation for his activities as a steward of the union, which is a local affiliate of the American Federation of State, County, and Municipal Employees (AFSCME) and Michigan AFSCME Council 25 (Council 25).
 
 
 3
 The 1988 through 1990 collective bargaining agreement (CBA) between the hospital and the union established a special procedure for the resolution of employee discharge grievances. Under that procedure, if the union was dissatisfied with the answer provided by the hospital at the fourth step of the grievance procedure, it was required to present an arbitration demand to the hospital within fourteen days of receipt of the hospital's answer. In the CBA provision at the center of this controversy, it continued, "Upon filing of a demand for arbitration, [the demand] shall be submitted to" the appropriate arbitrator.[1] In 1989, the hospital notified the union that, in contrast to the union's interpretation, it read the CBA as requiring the union to notify the arbitrator simultaneously when filing a demand for arbitration with the hospital.
 
 
 4
 The union filed a grievance on Murray's behalf on April 5, 1991. The hospital denied the grievance at step four. The union timely presented a demand for arbitration to the hospital on May 1, 1991 but, in keeping with its interpretation of the disputed provision, did not notify the arbitrator. At some uncertain point, the union notified arbitrator Joseph Girolamo who, since he was not the next arbitrator in the rotation, was not the appropriate arbitrator to notify. The hospital, in accordance with its view of the disputed clause, treated the arbitration demand as untimely and refused to arbitrate the grievance. The union therefore filed unfair labor practice charges with the Michigan Employment Relations Commission (MERC).[2]
 
 
 5
 Since it was not the appropriate forum in which to lodge them, the MERC dismissed the charges for lack of jurisdiction. The union did not refile the charges with the National Labor Relations Board (NLRB), the body that has jurisdiction over such claims. Murray learned of the dismissal of the MERC charges on November 6, 1991 but did not file a charge against the union.
 
 
 6
 The hospital eventually agreed to arbitrate Murray's grievance in a bifurcated fashion. The arbitrator would first consider whether the grievance was arbitrable despite the union's failure to notify the arbitrator upon making its demand for arbitration. If so, the arbitrator would proceed to consider the merits of the grievance. At the first stage, the union argued, as it does here, that the CBA's provision for notice to the arbitrator does not impose a duty on either party but instead gives both parties the right to notify the arbitrator in order to expedite the proceedings. The arbitrator rejected that argument and concluded that the CBA obligates the union to notify the arbitrator upon demanding arbitration. The arbitrator concluded that the union's failure rendered the grievance non-arbitrable and therefore dismissed it.
 
 
 7
 Murray sued the hospital and the union, claiming that the hospital had violated the CBA by firing him and that the union had violated its duty of fair representation by failing to notify the arbitrator of its intent to arbitrate his grievance. The parties agreed to hold discovery in abeyance and file cross-motions for summary judgment by December 13, 1993. The parties filed cross-motions for summary judgment on December 13, 1993. Murray, at the same time, moved for leave to file a second amended complaint. The district court granted the union's and the hospital's motions for summary judgment and denied Murray's motions. He now challenges the district court's rulings.
 
 II.
 
 8
 We review the district court's grant of summary judgment de novo. International Ass'n of Machinists and Aerospace Workers, Local 2770 v. Lourdes Hosp., Inc., 958 F.2d 154, 156-57 (6th Cir.1992). Summary judgment is appropriate if the pleadings, affidavits, and fruits of discovery "show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 9
 Murray argues that the union breached its duty of fair representation by failing to satisfy the CBA's arbitrator notice requirement. To succeed, he must show that the union's conduct was "arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (citation omitted); see also United Steelworkers of America v. Rawson, 495 U.S. 362, 372-73 (1990); Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 584 (6th Cir.1994).
 
 
 10
 Murray cannot satisfy this heavy burden. The CBA's arbitrator notice provision is unclear. Whereas other provisions in the CBA impose specific duties on specific parties, the disputed provision does not. Rather, it states, "upon filing of a demand for arbitration, it shall be submitted to [the appropriate] arbitrator." Since the provision does not refer to the union or the hospital, the union's interpretation of it as not imposing a requirement on either party is one sensible construction.
 
 
 11
 Murray argues, however, that the union's past conduct indicates that it actually knew its reading of the CBA to be untenable. He points to the fact that prior to the Baker case, which arose around the same time as Murray's, the union withdrew arbitration demands each time the hospital objected to the union's failure to notify the arbitrator. It does not follow necessarily that the union's past conduct amounts to a tacit admission that the hospital's interpretation is correct. A variety of unknown factors might have motivated the union in those prior instances. Murray's argument in this regard is further weakened by the fact that the union zealously advocated its interpretation of the CBA in this case and in the Baker and Shorter cases.
 
 
 12
 The union's interpretation of the CBA was one reasonable interpretation that happened to advance the union's strategic concerns. Especially since the union vigorously advocated that interpretation, its conduct cannot be called irrational.
 
 
 13
 Murray also argues that the union's assertion to the district court that it did in fact notify an arbitrator raises the question of whether the union violated its duty of fair representation by failing to present--in the arbitration to determine arbitrability--an available persuasive argument in favor of arbitrability. At arbitration, the union did not argue that it had in fact notified the arbitrator; instead, it argued that the CBA did not obligate it to do so.
 
 
 14
 While the failure to present an argument might in some cases be deemed irrational conduct, two factors preclude that conclusion in this case. First, in view of the conceded flaws in the purported notice--it was submitted to the wrong arbitrator and cannot be shown to have been submitted in a timely fashion--the arbitrator would have almost surely rejected an argument by the union that it actually provided notice. Moreover, arguing that it actually notified an arbitrator could be construed as an acknowledgment that the CBA required such notice. Such an acknowledgement would have weakened the union's strongest argument, i.e., that the CBA did not require the union to notify the arbitrator. Under these facts, the union's failure to argue that it actually notified the arbitrator cannot be called irrational.
 
 
 15
 Because we conclude that the union's conduct in the prosecution of Murray's grievance fell well within a "wide range of reasonableness," we reject Murray's contention that the union breached its duty of fair representation.
 
 III.
 
 16
 Murray, in his second amended complaint, sought to assert that the union breached its duty of fair representation by intentionally allowing the statute of limitations to run before lodging an unfair labor practice charge with the NLRB. He challenges the district court's denial of his motion to amend his complaint to add this allegation.[3] We review the district court's denial of his motion for abuse of discretion. Prather v. Dayton Power & Light Co., 918 F.2d 1255, 1259 (6th Cir.1990), cert. denied, 501 U.S. 1250 (1991). While leave to amend is to be freely granted, Fed.R.Civ.P. 15(a), it is to be denied if the amendment would be futile, would result in undue delay or prejudice to the opposing party, or was brought in bad faith. Foman v. Davis, 371 U.S. 178, 182 (1962).
 
 
 17
 In his proposed second amended complaint, Murray alleged that the union acted in bad faith by intentionally concealing and failing to inform him of its negligent misfiling of the unfair labor practice charge with the MERC--rather than with the NLRB--even though the union learned of its misfiling while there was still time to remedy it. We are unable to say that the district court's denial of leave to assert this claim was an abuse of discretion, since allowing the proposed amendment would have prejudiced defendants and would have been futile. Murray filed his motion on the stipulated date for the submission of summary judgment motions. Granting Murray's last-minute motion would have caused defendants to, in effect, start over after having prepared a summary judgment motion and its supporting documents. Since Murray failed to provide a persuasive justification for the delay, it follows that it was undue delay under the circumstances of this case, and that allowing the amendment would have resulted in undue prejudice to the defendants.
 
 IV.
 
 18
 For the foregoing reasons, we affirm the district court's order granting defendants' motions for summary judgment and its order denying Murray's motion for leave to amend his complaint.
 
 
 
 [1]
 The CBA created a panel of five pre-selected arbitrators, rotating automatically. The arbitrator to whom notice was to be given was the one whose name was next in the rotation
 
 
 [2]
 The unfair labor practice charges alleged that the hospital had unlawfully fired Murray and two other union members--Regina Shorter and Darlene Baker--because of their union affiliation and had violated the CBA by refusing to arbitrate their grievances
 
 
 [3]
 While Murray's notice of appeal referred to only the district court's grant of summary judgment, this issue is properly before us because an appeal from a final judgment, such as the district court's grant of summary judgment, draws into question all prior non-final orders. Caldwell v. Moore, 968 F.2d 595, 598 (6th Cir.1992)