**Deah M. SCALES and Reginald Scales, Plaintiffs,**

v.

**SONIC INDUSTRIES, INC., and Newton Investments, Inc., both d/b/a Sonic Drive–In Restaurants, Defendants.**

No. 94–622–S.

United States District Court, E.D. Oklahoma.

May 1, 1995.

Thomas J. Hadley, Antlers, OK, for plaintiff.

Clifford K. Cate, Jr., Muskogee, OK, George S. Corbyn, Jr., Joe M. Hampton, Oklahoma City, OK, for Sonic Industries.

Gene V. Primomo, Muskogee, OK, for Newton Investments, Inc.

## ORDER

SEAY, Chief Judge.

Plaintiff Deah M. Scales ("Scales") brings this action under the authority of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e–17, claiming defendants, Sonic Industries, Inc. ("Sonic") and Newton Investments, Inc. ("Newton"), terminated her employment in violation of Title VII by discharging her on account of her sex, pregnancy and husband's race (black). Scales also asserts pendent state law claims for intentional infliction of severe emotional distress, breach of contract, and making false statements to the Equal Employment Opportunity Commission ("EEOC"). Scales' husband, plaintiff Reginald Scales, asserts a claim for loss of consortium.

Sonic has moved the court for summary judgment[1] on Scales' Title VII claims arguing (1) Scales has failed to comply with Title VII jurisdictional prerequisites by failing to name Sonic in her EEOC charge and (2) Sonic is not Scales' employer under Title VII. In the event the court should grant summary judgment on the Title VII claims, Sonic further requests that the court decline to exercise supplemental jurisdiction over the remaining pendent state law claims. Because the court finds that Sonic is not Scales' employer under Title VII, summary judgment is appropriate in favor of Sonic and against Scales on Scales' Title VII claims. Having granted summary judgment on the only federal jurisdiction claims asserted against Sonic, the court declines to exercise supplemental jurisdiction over the pendent state law claims asserted by plaintiffs against Sonic and finds that such claims should be dismissed without prejudice.[2]

*Factual Background*

Scales began her employment as a fountain/car-hop at a Sonic restaurant ("Idabel restaurant") in Idabel, Oklahoma, on February 1, 1993. Sonic is the franchisor of the Idabel restaurant and is located in Oklahoma City, Oklahoma. Newton is the franchisee of the Idabel restaurant and is a Texas corporation. Newton is operating the Idabel restaurant under the trade name "Sonic Drive–In" pursuant to a written license/franchise agreement entered into between Newton and Sonic on October 1, 1988.

On December 31, 1993, Scales was discharged from her employment. She thereafter filed a charge of discrimination with the EEOC alleging she was discriminated against on the basis of her sex, pregnancy and her husband's race (black). In her charge of discrimination, Scales identified her employer as "Sonic Drive–In/Newton Investments" with the Idabel, Oklahoma, address of the Idabel restaurant. It is undisputed that Scales did not specifically name Sonic in her EEOC charge and that Sonic never received notice of any charge filed against it with the EEOC.

*Standard*

Having moved for summary judgment in its favor, Sonic is required to show the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c). Sonic's initial burden is to show the absence of evidence to support Scales' case. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Sonic must identify those portions of "the pleadings, depositions, answers to inter-

---

1. Sonic initially filed a motion to dismiss plaintiffs' first amended complaint pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure. By Order of March 28, 1995, the court converted the motion to dismiss to one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure due to the presentment and consideration of matters outside the pleadings. The parties were given additional time to supplement their positions but no responsive materials have been submitted by either side.

2. This order does not affect the viability of plaintiffs' claims against Newton.

rogatories, and admissions on file, together with the affidavits, if any," which establish the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. Sonic need not negate Scales' claim or disprove her evidence, but rather, Sonic's burden is to show that there is no evidence in the record to support Scales' claim. Scales, as the non-moving party, must go beyond the pleadings and by way of affidavits or "depositions, answers to interrogatories, and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

Summary judgment is not appropriate if there exists a genuine material factual issue such that a reasonable jury could return a verdict for Scales. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). In this regard, all of Scales' evidence is deemed true and all reasonable inferences are drawn in her favor. This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. With these standards in mind, the court turns to the merits of Sonic's motion.

*Compliance With Title VII Jurisdictional Requirements*

Sonic claims that Scales' failure to specifically name Sonic in the charge of discrimination filed with the EEOC deprives this court of subject matter jurisdiction over her Title VII claims. It is true that before a suit can be instituted under Title VII an aggrieved employee must file a timely charge of discrimination with the EEOC. 42 U.S.C. § 2000e–5(e); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). It is equally true that "the filing of an EEOC charge naming a defendant is a condition precedent to instituting a judicial proceeding against that defendant." *Gonzalez–Aller Balseyro v. GTE Lenkurt, Inc.,* 702 F.2d 857, 860 (10th Cir. 1983). In this regard, 42 U.S.C. § 2000e–5(f)(1) provides that an aggrieved party may bring a civil action "against the respondent named in the charge ...," after exhausting administrative remedies. The question in this case is whether Scales' identification of her employer as "Sonic Drive–In/Newton Investments" in her charge of discrimination is sufficient to enable her to bring this action against Sonic.

The Tenth Circuit Court of Appeals has recognized certain exceptions to the strict requirement that a defendant be specifically named in the EEOC charge before a Title VII action can be instituted against that defendant. In *Romero v. Union Pacific Railroad,* 615 F.2d 1303 (10th Cir.1980), the Tenth Circuit held it is appropriate to relieve an aggrieved employee from the naming requirement of section 2000e–5(f)(1)

> "where the defendant was informally referred to in the body of the charge, or where there is sufficient identity of interest between the respondent and the defendant to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation."

*Id.* at 1311 (citations omitted); *see also Gonzalez–Aller Balseyro,* 702 F.2d at 860.

In this case, Scales argues for the application of the second exception—the identity of interest exception. For reasons which are related to the court's analysis with respect to its determination that Sonic is not Scales' employer under Title VII, the court concludes that the identity of interest exception is not applicable to the facts of this case. Rather, the court finds that the first exception—whether Sonic was informally referred to in the body of the charge—is applicable under the facts of this case and it operates to relieve Scales from the strict naming requirement of section 2000e–5(f)(1). Here, it is undisputed that Scales named "Sonic Drive–In/Newton Investments" as her employer in the EEOC charge. Sonic (Sonic Industries, Inc.) was not specifically named. The informal reference to the trade name of "Sonic Drive–In", however, sufficiently links "Sonic Drive–In" to Sonic. Additionally, Scales' use of two separate names, "Sonic Drive–In/Newton Investments", indicates the existence of an entity named "Sonic Drive–In", or some similarly named entity, and it is consistent with an interpretation that construes a linkage between "Sonic Drive–In"

and that other entity; in this case, the entity being Sonic. To hold otherwise would be to engage in a hypertechnical interpretation of EEOC complaints which would be at odds with the court's obligation to liberally construe such complaints to accomplish the underlying purposes of Title VII. Consequently, the court finds that subject matter jurisdiction over Sonic is proper as Sonic was informally referenced in Scales' discrimination charge filed with the EEOC.

*Employer Status of Sonic*

■ As an alternative argument, Sonic contends that even if the court determines it was properly named as a respondent in the EEOC charge, it is still entitled to summary judgment on Scales' Title VII claims because it is not Scales' employer. Sonic contends Newton, the franchisee of the Idabel restaurant, is Scales' Title VII statutory employer. The court agrees.

■ Title VII proscribes certain discriminatory acts by employers. Thus, it is axiomatic that in order to establish her Title VII claims against Sonic, Scales must prove that Sonic was her employer. Over the years, courts have fashioned various tests to assist them in determining whether an entity is an employer for purposes of Title VII. In the franchise setting, the Tenth Circuit has applied the "integrated enterprise test" which considers the following factors: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.

*Evans v. McDonald's Corp.*, 936 F.2d 1087, 1089 (10th Cir.1991). Scales concedes that the appropriate test to be applied in determining whether an employee/employer relationship exists is the "integrated enterprise test" of *Evans*.[3] The court has applied the factors set forth in *Evans* and concludes that, as a matter of law, Sonic is not liable for the alleged discriminatory acts of Newton because Scales has failed to present any evidence that Sonic and Newton are integrated companies.

In *Evans*, the plaintiff was employed by the franchisee of a McDonald's restaurant. Plaintiff alleged she was sexually harassed by a coemployee and she instituted a Title VII action against McDonald's and the coemployee. The district court granted defendants' motion for summary judgment on the basis that they were not plaintiff's employers. On appeal, plaintiff argued that the determination of whether defendants were her employers was a question of fact precluding summary judgment. Although she conceded that defendants were not her employers under either the "economic realities test" or the "common law control test", she urged the Tenth Circuit to apply the "integrated enterprise test" used by other courts in finding "that two entities' 'activities, operations, ownership and management are sufficiently interrelated to be perceived as a single employer for purposes of Title VII.'" *Evans*, 936 F.2d at 1089 (citing *McKenzie v. Daven-*

---

**3.** Other tests which have been recognized by the Tenth Circuit include the "common law control test" and the "economic realities test". *See Wheeler v. Hurdman*, 825 F.2d 257 (10th Cir.), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). Under the "common law control test", the court's determination of an employer's status takes into account: (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer";

(9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties. *Id.* at 270; *Spirides v. Reinhardt*, 613 F.2d 826, 832 (D.C.Cir.1979). Under the "economic realities test", the court focuses on "whether the individual is economically dependent on the business to which he renders service." *Id.* at 271. Five factors are considered: (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; and (5) the degree of skill required to perform the work. *Id.*

While the Tenth Circuit has not definitively held that any one test must be applied in the franchise setting, the court finds the application of the "integrated enterprise test" most appropriate given the facts presented to the court and the parties' citation to, and reliance on, *Evans*.

port–Harris Funeral Home, 834 F.2d 930, 933 (11th Cir.1987)).

In affirming the district court's decision and finding that McDonald's did not exercise the requisite control over the franchisee to make it liable as plaintiff's employer, the Tenth Circuit referenced the elements of the "integrated enterprise test" and stated:

> "Even were we to assume the existence of an interrelation of operations, given the common goals and interaction of McDonald's and its independent franchises, the record before us indicates no common management, no centralized control of labor relations, and no common ownership or financial control."

Evans, 936 F.2d at 1090. Likewise, in this case, the record before the court clearly establishes that Sonic did not exercise the requisite control over Newton to create an employee/employer relationship between Scales and Sonic. The uncontested affidavit of Doyle Paden ("Paden"), Sonic's Director of Education and Development, along with other documentation submitted in support of the motion establish the following: (1) Newton operated the Idabel restaurant under a written license/franchise agreement of October 1, 1988, (2) Scales was never officially employed by Sonic, (3) Sonic did not own or operate the Idabel restaurant and did not make or participate in any of the employment related decisions regarding the Idabel restaurant employees, rather, all employment related decisions were made by Newton, (4) Sonic did not direct Scales' work performance and all equipment used at the Idabel store was presumably owned or leased by Newton, (5) Scales was never paid by Sonic for her work and did not provide Scales with any employment benefits, (6) Sonic did not pay any unemployment compensation taxes or other similar taxes on behalf of Scales, (7) as between Sonic and Newton there was no common financial control, no joint ownership interest, no common officers or directors, and no joint use of offices, equipment or employees, and (8) Sonic and Newton maintain separate bank accounts and financial records.

Rather than contesting the facts as set forth above, Scales attempts to avoid summary judgment by distinguishing this case from Evans. Specifically, Scales claims "the control over labor relations takes [this case] out of the ambit of Evans and makes this defendant an employer for purposes of Title VII." Scales argues that Sonic's Operation Manual of June 1991 ("Operation Manual"), which is provided to its franchisees, designates Sonic as the final arbiter in matters of labor relations. Scales references provisions of the Operation Manual dealing with the review/appeal process in connection with employee complaints. These provisions establish a policy and a process whereby aggrieved employees can "appeal decisions affecting them to successfully higher levels of management" including the final step of "send[ing] a letter explaining the situation to the President of Sonic Industries", Operations Manual, page 57. Further, as part of its policy statement Sonic provides that if an employee feels there has not been compliance with employment standards set by law, then he may, as the last alternative, "contact Sonic Industries, Franchise Service Department." Operation Manual, page 26.d.

These provisions cited by Scales are insufficient to support her argument that Sonic controls the labor relations with respect to the Idabel restaurant's employees. When juxtaposed with the facts outlined in Paden's affidavit, Sonic's policy statement and appeal process fall woefully short of establishing the necessary control to impose Title VII liability on Sonic. In contrast to the almost total lack of control over employment decisions and the Idabel restaurant's day-to-day operations established by Paden's affidavit, Sonic's policy statement and appeal process are merely reflective of an inherent interrelation of operations between the two entities and Sonic's goal of attaining conformity to certain operational standards and details. Evans, 936 F.2d at 1091 ("Outside of the necessary control over conformity to standard operational details inherent in many franchise settings, McDonald's only real control over [the franchisee] was its power to terminate the franchises.") Sonic's Operation Manual does not vest ultimate control over labor relations in Sonic, but rather, that authority remains with the franchisee who is merely guided in its employment decisions by the content of

the license/franchisee agreement with Sonic. *See Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1363 (10th Cir.1993) (a parent corporation's "broad general policy statements regarding employment matters" fail to satisfy the control prong of the *Evans* test). Consequently, based on the record before it, the court concludes that Sonic does not exercise the necessary control over the Idabel restaurant to make it Scales' employer under Title VII.[4]

*Pendent State Law Claims*

Sonic seeks the dismissal of the remaining pendent state law claims asserted by plaintiffs against it for breach of contract and loss of consortium.[5] Sonic requests the court relinquish supplemental jurisdiction over these claims. Plaintiffs have not disputed Sonic's position with respect to supplemental jurisdiction and the court finds dismissal of plaintiffs' pendent state claims asserted against Sonic to be appropriate. 28 U.S.C. § 1367(c)(3); *Wanner v. State of Kansas,* 766 F.Supp. 1005 (D.Kan.1991).

*Conclusion*

Based on the foregoing reasons, Sonic's converted motion for summary judgment is granted for the reason that Sonic is not Scales' employer under Title VII. Additionally, the court declines to exercise supplemental jurisdiction over plaintiffs' pendent state claims against Sonic for breach of contract and loss of consortium. Plaintiffs' claims against Sonic for breach of contract and loss of consortium are dismissed without prejudice.

**IT IS SO ORDERED.**

---

**4.** In the response brief, Scales also suggests that this case is similar to the *Evans* case because of the "monumental control by the franchisor, Sonic Industries, Inc., over the franchisee." In *Evans* the Tenth Circuit stated that the plaintiff *"alleges* that McDonald's exerted 'monumental control' over the operations of [the] franchises." *Id.* at 1090 (emphasis added). The Tenth Circuit rejected plaintiff's position and held, as a matter of law, that McDonald's did not have control over the franchises. Thus, in *Evans* there was no "monumental control" over the relations of the franchisee. Likewise, in this case, there is no "monumental control" by Sonic over Newton's operations.

**5.** In the response brief, plaintiffs concede that the pendent state law claims for intentional infliction of severe emotional distress and making false statements are asserted only against Newton.