Marc **PERRY,** Plaintiff,

v.

**BURGER KING CORPORATION and S.Z. Restaurant Corporation,** Defendants.

**No. 95 Civ. 5424 (RO).**

United States District Court, S.D. New York.

May 2, 1996.

---

Seth J. Farber, Robert J. Barsch, New York City, for Plaintiff.

Howard S. Wolfson, Whitman Breed Abbott & Morgan, New York City, for Defendant Burger King Corporation.

Traycee E. Klein, Dienst & Serrins, New York City, for Defendant S.Z. Restaurant Corporation.

## MEMORANDUM ORDER

OWEN, District Judge.

Plaintiff Marc Perry alleges race discrimination against him by defendants Burger King Corporation ("BKC") and S.Z. Restaurant Corporation ("SZ"), the franchisor and franchisee of a Burger King Restaurant on 110th Street and Broadway in Manhattan. He claims that on February 20, 1995, after having eaten in the restaurant, he was denied use of the restaurant's bathroom because he is black. The proposed Amended Complaint alleges five causes of action, three federal and two state claims: civil rights violations under 42 U.S.C. §§ 1981, 1982, and 2000a, and state law claims for negligent hiring and supervision and intentional infliction of emotional distress. Plaintiff seeks $1 million in compensatory damages, $10 million in punitive damages, injunctive relief, and attorney's fees. Before me now are three motions:[1] (1) plaintiff's motion to amend his complaint pursuant to Fed.R.Civ.P. 15(a); (2) SZ's motion to dismiss the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56; and (3) BKC's motion for judgment on the pleadings or summary judgment pursuant to Fed.R.Civ.P. 12(c) and 56 respectively. For the reasons stated below, plaintiff's Amended Complaint is accepted as to SZ; I grant SZ's motion to dismiss as to the second, fourth, and fifth causes of action and deny it as to the first and third; and I grant BKC's motion for summary judgment dismissing it from the action.

Defendant BKC operates and franchises Burger King restaurants. More than 90 percent of the approximately 6,500 Burger Kings are independently owned and operated franchises. The restaurant on 110th Street is one such franchise, owned and operated by

---

1. On November 13, 1995, I heard argument on three motions: plaintiff's motion to amend his complaint; SZ's motion to dismiss or for summary judgment; and BKC's motion for judgment on the pleadings or summary judgment. Since plaintiff had withdrawn two of his claims on the

eve of the November 13, 1995 argument and had not established why BKC, the franchisor, was included in the action, I denied plaintiff's motion to amend without prejudice, and instructed plaintiff to revise his complaint. Plaintiff has

SZ.[2] The relationship between BKC and the franchisee is governed by BKC's standard franchise agreement. The Franchise Agreement provides:

Franchisee is an independent contractor and is not an agent, partner, joint venturer or employee of BKC.... Franchisee shall have no right to bind or obligate BKC in any way.... BKC shall have no control over the terms and conditions of employment of Franchisee's employees.... Franchisee shall exhibit on the premises ... a notification that the Franchised Restaurant is operated by an independent contractor and not by BKC.

Plaintiff is a 32 year-old African American male. Plaintiff's original complaint alleged the following: On February 20, 1995 at 8:00 p.m., Perry, after eating at the Burger King, asked for the key to the rest room, but alleges he was told that the bathroom was out of order and was shown signs to that effect. Perry then asserts that he saw white patrons leaving the rest room, and again requested the bathroom key, but was denied once more. He states that employees of the restaurant then made "racially-based offensive comments," and after another white patron emerged from the rest room, plaintiff states he held open the door and observed that the facilities were in working order. Plaintiff now, in a proposed Amended Complaint, further alleges that the manager used racial epithets and employees physically threatened him. Plaintiff contacted New York City Police, and officers arrived, spoke to restaurant employees, and declined to make an incident report or file a complaint. Perry asserts that the restaurant intended to deny service to "undesirables"—blacks and Hispanics—by "virtue of an apparent policy to so discriminate." Amend. Compl. at ¶ 12.

Perry moves pursuant to Fed.R.Civ.P. 15(a) to amend his complaint. Rule 15(a) holds in part that a "party may amend ... once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent

of the adverse party; and leave shall be freely given when justice so requires." SZ never filed an answer, but moved to dismiss. "Because a motion to dismiss does not constitute a responsive pleading under Rule 15(a), no responsive pleading has been served in this case, and plaintiff is entitled to amend the complaint 'as a matter of course.'" *Levy v. Lerner*, 853 F.Supp. 636, 638 (E.D.N.Y. 1994), *aff'd*, 52 F.3d 312 (2d Cir.1995). Accordingly, as to SZ, plaintiff may amend without leave of the Court.

Defendant BKC did submit an answer, thus precluding absolute entitlement to amend, and it opposes plaintiff's motion to amend. Although leave to amend shall be freely granted, leave to amend can be denied if the amendment would be futile. *Mackensworth v. S.S. American Merchant*, 28 F.3d 246, 251 (2d Cir.1994); *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994). Here, for reasons set forth hereafter, leave to amend as to BKC is denied, since I grant BKC's motion for summary judgment on grounds equally applicable to either the original or Amended Complaint.

SZ moves to dismiss all five causes of action in the proposed Amended Complaint. SZ asserts that plaintiff has failed to state a claim in either the civil rights causes of action or the state law claims. Since matters outside the pleadings were presented to and not excluded by the Court, SZ's motion is treated as one for summary judgment under Fed.R.Civ.P. 56, and I must only assess whether genuine issues of material fact remain for a jury, resolving any ambiguities and drawing all reasonable inferences against the moving party. *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F.Supp. 346 (S.D.N.Y.1993).

With respect to the first cause of action, 42 U.S.C. § 1981 provides that "All persons ... shall have the same right ... to make and enforce contracts ... and to the full and equal benefit of all laws and proceed-

now done so, and defendants have renewed their motions.

**2.** The 110th Street restaurant was franchised to Jerome Zavidow on February 4, 1984 and later assigned to SZ.

ings for the security of persons and property as is enjoyed by white citizens...." Subsection (b) of this provision states that the term "make and enforce contracts" includes "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." The statute applies to acts of private racial discrimination, and essential "to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory ... and racially motivated." *Albert v. Carovano,* 851 F.2d 561, 571 (2d Cir. 1988) (en banc) (citations omitted); *Yusuf v. Vassar College,* 827 F.Supp. 952, 955 (S.D.N.Y.1993), *aff'd in part, rev'd in part,* 35 F.3d 709 (2d Cir.1994). To establish a § 1981 claim, a plaintiff must allege facts showing: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by defendant; and (3) the discrimination concerns one or more of the activities enumerated...." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085 (2d Cir.1993). Resolving all ambiguities against SZ, plaintiff has stated a claim under § 1981, particularly if Perry is considered to have contracted for food *and* use of the bathroom. Issues of material fact preclude summary judgment as to plaintiff's first cause of action. *See also Perry v. Command Performance,* 913 F.2d 99 (3d Cir. 1990), *cert. denied,* 502 U.S. 1093, 112 S.Ct. 1166, 117 L.Ed.2d 412 (1990); *Bermudez Zenon v. Restaurant Compostela, Inc.,* 790 F.Supp. 41, 44 (D.P.R.1992); *Patterson v. McLean Credit Union,* 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989).[3]

■ As to the second cause of action, § 1982 involves real or personal property: "All citizens ... shall have the same right ... as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Section 1982 has been interpreted to include a somewhat broad definition of "property." *See Olzman v. Lake Hills Swim Club, Inc.,* 495 F.2d 1333, 1339 (2d Cir.1974), where it was stated: "[i]t is reasonable to characterize the freedom of blacks to go and come as guests of a swim club member as

sufficiently pertaining to a condition of property to be a right capable of being held under § 1982." Plaintiff's allegations, however, fall outside of even this broad definition. Use of a restaurant's bathroom is not a right to "inherit, purchase, lease, sell, hold, and convey real and personal property." Perry accordingly fails to state a claim under § 1982, and the second cause of action is dismissed.

■ Plaintiff's third cause of action is under 42 U.S.C. § 2000a, which provides that: "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities ... and accommodations of any place of public accommodations ... without discrimination or segregation on the ground of race...." This section most directly addresses the discrimination alleged here, for it covers restaurants and their rest rooms. *Presley v. City of Monticello,* 395 F.2d 675 (5th Cir.1968). Again, resolving all ambiguities in favor of the non-moving party, I deny SZ's motion as to this cause of action.

■ Perry also asserts two state law tort claims: negligent hiring and supervision and intentional infliction of emotional distress. The courts of New York have long recognized a claim for negligent hiring, however, "[t]o recover damages for injuries sustained because an employer has hired or retained an incompetent employee, a plaintiff must establish a duty owed by the defendant employer, a breach of that duty by the defendant employer, and damages proximately caused by the defendant employer's breach". *Vincenzino v. Calvosa,* 151 Misc.2d 95, 572 N.Y.S.2d 611, 612 (N.Y.Sup.Ct.1991). A defendant employer may be required to answer for the tort of an employee against a third party, but only "when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm." *Detone v. Bullit Courier Service, Inc.,* 140 A.D.2d 278, 528 N.Y.S.2d 575, 576 (1988). A prior decision in this district has already noted that "New York courts have not recognized claims for negligent hiring of an employee whose subsequent offense involved racial harassment." *Brown v.*

---

**3.** The Civil Rights Act of 1991 overturned *Patterson* in the employment context in that it expanded § 1981 to cover discriminatory actions that occurred after a person is hired.

*Bronx Cross County Medical Group*, 834 F.Supp. 105, 109 (S.D.N.Y.1993). Moreover, most of the cases in which this claim has been sustained involve significant physical injury. *Brown*, 834 F.Supp. at 110. Perry alleges racial harassment and fails to establish the requisite elements to state a claim for negligent hiring under New York law. Accordingly, the fourth cause of action is dismissed.

 Perry's fifth claim seeks recovery for intentional infliction of emotional distress. To state a cause of action for this tort, New York uses the Restatement 2d of Torts definition of intentional infliction of emotional distress, requiring plaintiff to allege four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Mohamed v. Marriott Int'l., Inc.*, 905 F.Supp. 141, 157 (S.D.N.Y.1995); *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993). This standard is extraordinarily strict, thus liability will flow only from conduct that "is so outrageous in character and so extreme in degree as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Martin v. Citibank N.A.*, 762 F.2d 212, 220 (2d Cir.1985) (citations omitted); *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983). Overt acts of discrimination have generally not been found to rise to the level of intentional infliction of emotional distress. *Mohamed*, 905 F.Supp. at 158. In *Howell*, the New York Court of Appeals stated that "[i]ndeed, of the intentional infliction of emotional distress claims considered by the Court, every one has failed because the alleged conduct was not sufficiently outrageous." *Howell*, 596 N.Y.S.2d at 353, 612 N.E.2d at 702. A district court in this circuit noted further that "[i]n the rare instances where the New York courts have found the complaint sufficient to state a claim for intentional infliction of emotional distress in the employment context, the claims have been accompanied by allegations of sex discrimination and more significant battery."

*Gerzog v. London Fog Corp.*, 907 F.Supp. 590 (E.D.N.Y.1995). Under the stringent standard of New York law, plaintiff fails to state a claim for intentional infliction of emotional distress, and this cause of action is dismissed.

Accordingly, I grant SZ's motion for summary judgment as to the second, fourth, and fifth causes of action and deny its motion as to the first and third claims.

 Defendant BKC moves for judgment on the pleadings under Rule 12(c) and/or summary judgment under Rule 56. Again, having received and considered matters outside the pleadings, I treat the motion as one for summary judgment. When I denied without prejudice plaintiff's motion to amend on November 13, 1995, I observed that plaintiff had thus far failed to indicate any involvement or responsibility by franchisor BKC. However, notwithstanding plaintiff's submission of the Amended Complaint and supporting material, alleging control and responsibility by BKC, and viewing this evidence and inferences arising therefrom in favor of plaintiff, there are still no genuine issues of material fact in dispute precluding dismissal.

BKC's central assertion is that SZ, not it, owns and operates the Burger King on 110th Street, and plaintiff does not allege any discrimination pursuant to a policy or practice of BKC or with BKC's knowledge or consent, or within its oversight. According to the Franchise Agreement, SZ is an independent contractor, not an agent or employee of BKC. BKC argues that, to the extent that plaintiff was denied the rest room key, there is no allegation or showing that the denial resulted from any action or policy of BKC. The Franchise Agreement states in part:

> BKC shall have no control over the terms and conditions of employment of Franchisee's employees.... In all public records and in his relationship with other persons ... Franchisee shall indicate his independent ownership of the franchised restaurant. Franchisee shall exhibit on the premises ... a notification that the Franchised Restaurant is operated by an independent contractor and not by BKC.

Plaintiff's primary contention is that BKC exerts a high level of control over its franchises, and since the issue of control is a material question of fact, a denial of summary judgment is warranted. The Amended Complaint states "on information and belief":

> Burger King, by virtue of its franchise agreements and other contractual bases, controls and regulates the day-to-day operations of S.Z. Corp., and sets its policies, practices and procedures, including but not limited to control of the terms of operations, signs . . . employment terms and training and approval of managers . . .
>
> Further . . . on information and belief, indicia of S.Z.'s ownership of the restaurant is nowhere displayed publicly at the restaurant, and accordingly, defendant S.Z. is operating under an apparent agency to defendant Burger King. Further, on information and belief, Burger King controls all signs and advertising, and further, S.Z. and Burger King act in concert for the purposes of maintaining to the public that the restaurant is a Burger King restaurant. . . .

However, a party opposing summary judgment may not rely, as here, upon "mere speculation or conjecture as to the true na-

ture of the facts to overcome a motion for summary judgment," *David v. Glemby Co., Inc.*, 717 F.Supp. 162, 165 (S.D.N.Y.1989), and the "mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party." *Prompt. Elec. Supply Co., Inc. v. Allen–Bradley, Co.*, 492 F.Supp. 344, 346 (S.D.N.Y.1980).

The nature of the franchisor-franchisee relationship here,[4] the Franchise Agreement, and the affidavit of BKC's in-house counsel in opposition all demonstrate that plaintiff has not presented a triable issue regarding BKC. Accordingly, BKC's motion for summary judgment is granted. *See also Hayman v. Ramada Inn, Inc.*, 86 N.C.App. 274, 357 S.E.2d 394 (1987) (in suit where hotel guest was injured while on franchisee's premises, summary judgment affirmed in favor of franchisor where franchisor did not have actual authority over day-to-day operations and franchisor did not hold itself out to public as having apparent authority); *Murphy v. Holiday Inns, Inc.*, 216 Va. 490, 219 S.E.2d 874 (1975) (summary judgment affirmed in favor of franchisor where franchise agreement gave franchisor no power to con-

---

4. An array of analogous cases support summary judgement in favor of BKC. For example, in *Evans v. McDonald's Corp.*, 936 F.2d 1087 (10th Cir.1991), the court held that the franchisor could not be held liable in a sexual harassment suit where the plaintiff was a manager of the franchisee, because plaintiff was not an employee of the franchisor: "the record before us indicates no common management, no centralized control of labor relations, and no common ownership or financial control." *Id.* at 1090. In *Myszkowski v. Penn Stroud Hotel, Inc.*, 430 Pa.Super. 315, 634 A.2d 622 (1993), plaintiff sued defendants Best Western Inc. and Penn Stroud Hotel after being sexually assaulted in the bathroom of a hotel. Summary judgment was granted in favor of Best Western. The court noted that the agreement between Penn Stroud and Best Western "specifically provided that their relationship is one of independent contractor" and that there was "clearly not the necessary control by Best Western of day-to-day operations" to find Best Western liable. *Id.* 634 A.2d at 627. Similarly, in *Little v. Howard Johnson Co.*, 183 Mich.App. 675, 455 N.W.2d 390 (1990), in which a person sustained injuries by falling on an icy walkway in front of the restaurant, summary judgment was granted in favor of the franchisor. The court stated that the franchisor could not be held directly liable because it was not the possessor of

the restaurant and could not be held vicariously liable because franchisor retained no power to control the details of the day-to-day operations. *Id.* 455 N.W.2d at 394. Moreover, in *Myers v. Holiday Inns, Inc.*, No. CIV.A. 88–4222, 1989 WL 81303 (E.D.La.), the plaintiff alleged that the defendants intentionally violated her civil rights by refusing to give her the room she wanted and refusing to serve her breakfast in the motel restaurant. There, the district judge granted the franchisor summary judgment because plaintiff failed to produce evidence that the franchisee was the principal of Holiday Inn, and Holiday Inn submitted sufficient evidence to show that it exercised no day-to-day control over the franchisee's motel.

Although *Singleton v. International Dairy Queen*, 332 A.2d 160 (Del.Super.Ct.1975), appears to support plaintiff's position, the overwhelming weight of the authority squarely supports granting summary judgment in favor of BKC. *Singleton* is distinguishable from the case at bar because the injury in that case—a young girl falling through a glass door of a franchised Dairy Queen restaurant—related directly to an element of the franchise controlled by franchisor—the physical structure and remodeling of the franchise.

trol daily maintenance of the premises); *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 704, 133 L.Ed.2d 660 (1996) (summary judgment affirmed where rights under franchise agreement did not make franchisor "operator" for purposes of Americans with Disability Act).

For the reasons stated above, I accept plaintiff's Amended Complaint as to SZ, but deny plaintiff's motion to amend his complaint as to BKC; I grant SZ's motion for summary judgment as to the second, fourth, and fifth causes of action, but deny SZ's motion as to claims one and three; and I dismiss BKC from this action on its motion for summary judgment.[5]

The foregoing is so ordered.

---

**5.** Defendant SZ also has made a motion for sanctions under Fed.R.Civ.P. 11. That motion is denied.