**Philip HATCHER, Plaintiff,**

v.

**Warner AUGUSTUS, d/b/a 7–Eleven and Southland Corporation, Defendants.**

**No. 96–CV–0207 (ADS).**

United States District Court, E.D. New York.

March 1, 1997.

Law Offices of Seth J. Farber and Robert J. Barsch, New York City, for Plaintiff.

Borker & Sussman, New York City (Stephen Sussman, of counsel), for Defendant Southland Corporation.

Richard J. Reisch, Carle Place, NY, for Defendant, Warner Augustus.

MEMORANDUM DECISION and ORDER

SPATT, District Judge.

This motion addresses the liability of a franchisor in a Title VII case. The plaintiff, Philip Hatcher, ("Hatcher" or the "plaintiff"), a member of a Protestant Church, initiated this action, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, for the alleged wrongful termination of his employment as a manager of a 7–Eleven convenience store located in Wantagh, New York, based on his religion.

The plaintiff seeks a declaratory judgment that the defendants violated his constitutional rights and to hold the defendant Warner Augustus, ("Augustus"), the franchisee of the 7–Eleven where the plaintiff worked, and the defendant Southland Corporation, ("Southland" or the "defendant"), the franchisor, jointly and severally liable for damages.

Southland moves to dismiss all claims against it pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which the court can grant relief, or in the alternative, for an order granting summary judgment pursuant to Fed.R.Civ.P. 56 dismissing the Complaint.

## I. BACKGROUND

Southland is the owner of the 7–Eleven trademark and is a franchisor of numerous 7–Eleven stores in New York and other states, including the location at issue in Wantagh. Augustus is the franchisee of the 7–Eleven store where the plaintiff worked as a manager. Southland asserts that each franchised store is independently owned and operated by its franchisee. A written store franchise agreement ("Agreement") governs Southland's relationship with each franchisee, including the Wantagh store. As part of the Agreement, Southland provides the franchisee with a license to use the 7–Eleven system and the trade-name and service mark; Southland also leases the premises and equipment to the franchisee. In return, the franchisee pays Southland an initial franchise fee and an ongoing royalty, calculated as a percentage of the store's gross profits. In addition, the franchisee is required to comply with standards in order to protect Southland trademark, image and reputation. According to the defendant, pursuant to the Agreement, each franchisee operates his or her own business and makes independent decisions regarding labor relations and day-to-day operations.

On or about April 1, 1989, the plaintiff became employed as a clerk by the 7–Eleven store owned by Augustus. On June 6, 1989, Augustus entered into a Store Franchise Agreement with Southland. According to the plaintiff, in or about 1991, he was promoted to the position of manager and his immediate supervisor was the defendant Augustus. The plaintiff states that Augustus was responsible for making out the weekly work schedules for the managers and clerks at the 7–Eleven store at issue.

The plaintiff contends that prior to May 19, 1995, Augustus did not require the plaintiff to work on Sunday mornings so that he could attend the services at his Protestant church. The plaintiff alleges that on May 19, 1995, Augustus scheduled Hatcher to work on the next Sunday morning. The plaintiff claims that he asked Augustus to exchange his hours with another manager so the he could attend his religious services, but Augustus refused. On May 22, 1995, the plaintiff called Augustus and advised him that he was required to attend church on Sunday and therefore could not work on that particular day. The plaintiff asserts that Augustus informed him that if he did not work on Sunday morning he would be terminated. According to the plaintiff, he was discharged on May 22, 1995. The plaintiff maintains that prior to the termination of his employment, he performed his responsibilities as manager in a satisfactory manner.

Southland moves for an order dismissing the Complaint as against it pursuant to Fed.R.Civ.P. 12(b)(6) or in the alternative, for an order granting summary judgment in its favor under Fed.R.Civ.P. 56, on the ground that it is not the employer of the plaintiff within the context of a Title VII claim.

Based on sufficient notice to all the parties, the Court elects to treat this motion as one for summary judgment.

## II. DISCUSSION

### A. Standard of review as to Southland's motion for summary judgment

A court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir. 1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c) (setting forth sum-

mary judgment standard). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit, "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United Nat'l Ins. Co. v. Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, the nonmovant must come forward with specific facts showing that a genuine issue exists to avoid the motion being granted. *West–Fair Elec. Contractors v. Aetna Cas. & Sur. Co.,* 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed. R.Civ.P. 56(e)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *See Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 129 (2d Cir.1996); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue-finding," not "issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994).

It is within this framework that the Court addresses the grounds for the present motion for summary judgment.

**B.** *The plaintiff's Title VII religious discrimination claim*

Title VII of the Civil Rights Act of 1964 prohibits discriminatory employment practices. 42 U.S.C. § 2000e–2(a) states, in pertinent part:

It shall be unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . .

In order to recover under Title VII, the plaintiff must establish that the defendant is his "employer." Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, subsection (b) an employer is defined as follows:

a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person. . . .

The courts have wrestled with the appropriate test to be applied, within the Title VII context, to determine whether one should be construed as an employer. *See Hill v. New York City Bd. of Educ.,* 808 F.Supp. 141, 147 (E.D.N.Y.1992). The law in this circuit is apparently unsettled as to which test should be applied. As a result, courts have relied upon a number of tests to determine whether a party qualifies as an "employer" under Title VII. The more commonly applied tests include the National Labor Relations Board test, requiring consideration of the following factors: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control; and the traditional common law test of agency, turning on the employer's right of control. *See McKenzie v. Davenport–Harris Funeral Home,* 834 F.2d 930, 933 (11th Cir.1987), *see also Evans v. McDonald's Corp.,* 936 F.2d 1087, 1089 (10th Cir.1991). The traditional common law test of agency was replaced within the context of the Fair Labor Standards Act cases by an " 'economic realities' test, under which per-

sons are considered employees if they, 'as a matter of economic reality, are dependant upon the business to which they render service.' " *Hickey v. Arkla Industries, Inc.*, 699 F.2d 748, 751 (5th Cir.1983) (citing *Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297 (5th Cir.1975)) (quoting *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 1549–50, 91 L.Ed. 1947 (1947)).

A recent trend is to apply a third test, the "hybrid test", which combines both the economic realities test and the common law agency test. *See Frankel v. Bally, Inc.*, 987 F.2d 86, 90 (2d Cir.1993); *see, e.g., Oestman v. National Farmers Union Ins. Co.*, 958 F.2d 303, 305 (10th Cir.1992); *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1089 (10th Cir.1991); *Diggs v. Harris Hospital–Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir.), *cert. denied*, 488 U.S. 956, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988); *Wheeler v. Hurdman*, 825 F.2d 257, 275–77 (10th Cir.), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987); *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 981 (4th Cir.1983). Although the Second Circuit has not explicitly adopted an analysis to be applied in determining whether an individual is an "employee" under Title VII within the context of a franchisor/franchisee relationship, it has noted the emergence of the hybrid test. *See Frankel*, 987 F.2d at 90; *see also Hyland v. New Haven Radiology Assocs., P.C.*, 794 F.2d 793, 797 (2d Cir.1986).

■ The hybrid test offers a non-exhaustive list of factors to be considered. These factors are drawn from the law of agency and are, in large part, the same as those listed as part of the common law agency test. *Frankel*, 987 F.2d at 90; *see also Spirides v. Reinhardt*, 613 F.2d 826 (D.C.Cir. 1979). "Under the hybrid test, a court examines the economic realities of the relationship but [also] considers 'the extent of the employer's right to control the means and manner of the worker's performance' as the most important factor." *Frankel*, 987 F.2d at 90 (quoting *Spirides v. Reinhardt*, 613 F.2d 826 (D.C.Cir.1979)); *see also People of State of New York v. Holiday Inns, Inc.*, 62 Fair Empl. Prac. Cas. (BNA) 815, 1992 WL 532169 (W.D.N.Y.1992). In *Spirides*, the D.C. Circuit Court noted that no one factor is dispositive, although the focus is in the employer's right to control the means and manner of the worker's performance. *Spirides*, 613 F.2d at 831. Applying the hybrid test, the Court must consider the below factors to determine the status of the relationship:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor . . .;

(2) the skill required in the particular occupation;

(3) whether the "employer" . . . furnishes the equipment used and the place of work;

(4) the length of time during which the individual has worked;

(5) the method of payment . . .;

(6) the manner in which the relationship is terminated . . .;

(7) whether annual leave is afforded;

(8) whether the work is a integral part of the business of the "employer";

(9) whether the worker accumulates retirement benefits;

(10) whether the "employer" pays social security taxes; and

(11) the intention of the parties.

*Spirides*, 613 F.2d at 832.

C. *The plaintiff's employment status under the hybrid test*

■ The plaintiff, asserts that Southland is paying his wages and withholding federal and state taxes and making social security and unemployment insurance contributions on his behalf. He contends that such payments of wages to the plaintiff and withholding of taxes on his behalf by Southland is an indicia of control of labor relations, sufficient to demonstrate that Southland is an employer of Hatcher with regard to any of the tests.

In opposition, Southland asserts that it is not an employer of the plaintiff with regard to any of the tests which determine whether there is an employer/employee relationship. In particular, Southland points to its franchise agreement with Augustus which provides that he is an independent contractor, not an agent, of Southland and, as such, he has exclusive control over and responsibility

for all labor relations at his independently-owned and operated 7–Eleven store. The full text of paragraph 21 in the franchise agreement states:

21. INDEPENDENT CONTRACTOR. FRANCHISEE [Hatcher] shall be an independent contractor and shall control the manner and means of operation of the store and exercise complete control over and responsibility for all labor relations and the conduct of FRANCHISEE'S agents and employees, *including, but not limited to, the day-to-day operations of the store and all store employees.* FRANCHISEE and FRANCHISEE'S agents and employees shall not (i) be considered or held out to be agents or employees of 7–ELEVEN or (ii) negotiate or enter any agreement or incur any liability in the in the name of or on behalf of, or that purports to bind, 7–Eleven. No action taken by FRANCHISEE'S agents or employee shall be deemed to be actions obligating 7–ELEVEN. FRANCHISEE acknowledges that nothing herein shall create a fiduciary or similar relationship with 7–ELEVEN. [emphasis supplied].

Southland vigorously contends that the plaintiff is not its employee, in any manner, so as to incur Title VII liability. Southland maintains that it did not hire, supervise, train, or terminate the plaintiff. On the contrary, Augustus exclusively possessed those rights and responsibilities. Southland claims that the plaintiff's termination by Augustus was without its knowledge or approval. The Court is reminded that Southland and Augustus are completely distinct entities and have no common owners, common officers, common directors, common managers or common employees. Southland alleges that it does not share offices or equipment with Augustus and maintains separate bank accounts and financial records. Further, Southland did not pay or withhold the plaintiff's wages, social security taxes, unemployment benefits, worker's compensation benefits or any other forms of benefits. In addition, Southland asserts that it was not responsible for determining Hatcher's wages or hours.

In sum, Southland claims that Augustus is an independent contractor with complete control over all of his own employment matters and the day-to-day operations in his store, such as the hiring, firing, disciplining, and setting wages of all its own employees, including the plaintiff.

In response to the plaintiff's allegation that Southland paid Hatcher's wages and withheld federal and state taxes, which created an employer/employee relationship, the defendant asserts that Hatcher's argument is unfounded and erroneous. Southland maintains that the check stubs that the plaintiff alleges create an employer/employee relationship are in fact payroll stubs for the 7–Eleven franchisee Warner Augustus. In this regard, the franchise agreement provides in relevant part:

FRANCHISEE shall prepare and furnish to 7–Eleven ... weekly time and wage authorizations for FRANCHISEE'S Store employees....

\*    \*    \*    \*    \*    \*

If FRANCHISEE is not in breach of this agreement, 7–Eleven shall: (i) provide ... payroll checks for FRANCHISEE'S Store employee, ... (ii) timely pay on behalf of FRANCHISEE ... the payroll for FRANCHISEE ... the payroll for FRANCHISEE'S Store employee....

\*    \*    \*    \*    \*    \*

As part of the Bookkeeping Records, 7–Eleven shall establish and maintain an Open Account for FRANCHISEE. FRANCHISEE'S ... Operating Expense ... shall be charged to the Open Account.

In the reply affidavit of Thomas Scallion, the Southland Marketing Manager of Market 2422, that includes the franchise at issue, it is stated that the defendant's issuance of payroll checks to the plaintiff, on behalf of Augustus, is a payroll service that is contemplated by and authorized by the franchise agreement as set forth above. The check stubs issued to the plaintiff recite the following:

7–ELEVEN FRANCHISEE
PAYROLL FOR WARNER
AUGUSTUS DBA –11 7–ELEVEN

STORE 18991C 3382 PARK & BEECH WANTAGH NY 11793

According to Southland, it has no discretion concerning the contents of the pay checks, and depends entirely upon the data provided to it by its franchisee, Augustus, in the form of written time and wage authorizations. Stated simply, Southland contends that its function in the matter of payroll checks is entirely ministerial. Southland prepares the payroll checks from the data submitted by Augustus. All of the expenses relating to the Store's payroll, including unemployment benefits, workers' compensation insurance, payroll insurance and social security contribution, are charged to the Franchisee's Open Account as part of the their operating expense. The definition of operating expenses is set forth in the Agreement as follows:

> Operating Expense means the expense . . . incurred by FRANCHISEE in the operation of the Store for: (i) payroll; (ii) payroll taxes (including unemployment, worker's compensation, payroll insurance, and social security contribution). . . .

Southland contends that the imposition of employer status upon it in such circumstances would be akin to imposing such status upon any entity offering a payroll service to an employer. Thus, Southland asserts that its ministerial function in the payment process does not create an employer/employee relationship. The Court agrees.

In a case factually similar to the one at hand, *Scales v. Sonic Indus. Inc.*, 887 F.Supp. 1435, 1439–40 (E.D.Okla.1995), the court found that the franchisor did not exercise the requisite control over the restaurant/franchisee at issue so as to impose employer liability as follows:

> (1) [the franchisee] operated the [ ] restaurant under a written license/franchise agreement [ ], (2) [the plaintiff] was never officially employed by [the franchisor], (3) [the franchisor] did not own or operate the [ ] restaurant and did not make or participate in any of the employment related decisions regarding the [ ] restaurant employees, rather all employment related decisions were made by [the franchisee], (4) [the franchisor] did not direct [the plaintiff's] work performance and all equipment used at the restaurant was presumably owned or leased by [the franchisee], (5) [the plaintiff] was never paid by [the franchisor] for her work and did not provide [the plaintiff] with employment benefits, (6) [the franchisor] did not pay any unemployment compensation taxes or other similar taxes on behalf of [the plaintiff], (7) as between [the franchisor] and [the franchisee] there was no common financial control, no joint ownership interest, no common officers or directors, and no joint use of offices, equipment or employees, and (8) [the franchisor] and [the franchisee] maintain separate bank accounts and financial records.

*Scales,* 887 F.Supp. at 1439.

The Court finds that the *Scales* rationale is similarly dispositive in this case. The application of the relevant factors in the hybrid test make it clear that Southland did not operate the 7–Eleven store. Augustus was the sole operator, in accordance with the requirements of the written franchise agreement. Augustus exclusively possessed the rights and responsibilities regarding all employment matters and the day-to-day operations in his store, and his relationship with the plaintiff as his employee.

Further, the Court finds that Southland was not responsible for compensating the plaintiff for his hourly wage or salary, or providing any employment benefits. The Court finds that at no time has Southland utilized its own funds to pay any portion of the compensation to Augustus' employees, including the plaintiff. The fact that Southland provided a payroll service to Augustus for paying the employees of the Wantagh 7–Eleven does not in any manner create an indicia of control over labor relations sufficient to demonstrate that Southland is an employer of Hatcher.

In the Court's view, Southland's only relationship to Hatcher is that it licenses a franchise to the plaintiff's employer, Augustus. The franchise agreement is clear in its complete delegation of control over and responsibility for all labor relations to the franchisee, Warner Augustus.

In a recent decision, *Perry v. Burger King Corp.*, 924 F.Supp. 548, 553 (S.D.N.Y.1996), a similar provision was contained in the franchise agreement. That case involved allegations of race discrimination suffered by a restaurant customer. The franchise agreement in *Perry* stated, in pertinent part:

> BKC shall have no control over the terms and conditions of employment of Franchisee's employees.... Franchisee shall indicate his independent ownership of the franchised restaurant. Franchisee shall exhibit on the premises ... a notification that the Franchised Restaurant is operated by an independent contractor and not by BKC.

*Id.*

The court in *Perry* declined to find that the franchisor was the employer of the franchisee and granted its motion for summary judgment. *Id.* at 554.

Also in *Evans v. McDonald's Corp.*, 936 F.2d 1087 (10th Cir.1991) it was recognized that a franchisor is not the employer of employees of the franchisee. *Id.* at 1090; *see also Raines v. Shoney's, Inc.*, 909 F.Supp. 1070, 1078 (E.D.Tenn.1995)(finding that licensing of the franchise is not sufficient control to hold the franchisor liable). The *Evans* Court found insufficient control by the franchisor over operations of the franchisee so as to make the franchisor liable as an employer under Title VII. *See Evans*, 936 F.2d at 1090 (also finding that stringent control of operations, frequent inspections and provision of training for franchise employees was not sufficient to impose liability).

Accordingly, the Court finds that Southland is not an "employer" of the plaintiff Hatcher within the provisions of Title VII. Therefore, the motion by Southland for summary judgment dismissing the Complaint as against it, is granted.

## III. *CONCLUSION*

After reviewing the parties submissions, and for the reasons set forth above, it is hereby,

**ORDERED,** that the motion for summary judgment by the defendant Southland Corpo-

ration pursuant to Fed.R.Civ.P. 56 dismissing the Complaint as against it, is granted.

**SO ORDERED.**